403 So.2d 693 (1981)
STATE of Louisiana
v.
Elmer J. KELLER.
No. 81-KA-0057.
Supreme Court of Louisiana.
September 8, 1981.
*694 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Michael Fanning, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
James C. Lawrence, Gerdes, Valteau & Cade, New Orleans, for defendant-appellant.
STOKER, Justice Ad Hoc.[*]
On July 17, 1980, the defendant, Elmer J. Keller, was charged by bill of information with unlawful possession of phencyclidine (PCP), in violation of LSA-R.S. 40:967(C). The defense filed a motion to suppress evidence which was denied after a hearing on August 28, 1980. The defendant thereupon pled guilty to unlawful possession of phencyclidine, reserving the right to appeal the trial court's denial of the motion to suppress evidence. State v. Crosby, 338 So.2d 584 (La.1976). The defendant was sentenced to pay a fine of $250.00 or to serve sixty days in the parish prison.
The following facts were adduced from the hearing on the motion to suppress evidence. On June 27, 1980, at approximately 3:00 AM, the defendant was driving in the French Quarter area of New Orleans when he allegedly became drowsy and parked his car on the 200 block of Dauphine Street, so that he could rest. The defendant thereupon fell asleep in the driver's seat. The motor of his car was running, the lights were on and music was playing from either a radio or tape deck.
Sergeant Paul M. Melancon, the arresting officer, stated that upon noticing the defendant slumped over the steering wheel, he approached the vehicle, opened the driver's door, cut off the ignition, and tried to awake the defendant. Sergeant Melancon was accompanied by two other officers and they were all in plain clothes. Melancon then described the ensuing events as follows:
"When I got out the car, we approached from the passenger side first, stooped in and looked into the window and I saw the subject, and like I said he was over the wheel and his right hand was over the floor shift with his head towards the *695 steering wheel. I walked around to the driver's side of the vehicle, reached in, opened the door and cut off the ignition. At this time, I tried to wake him. I shook him a couple of times and I didn't get any response. As I stood there looking at him he appeared to be breathing normally. I shook him again and he sat back in the seat and looked at me and I told him I was a Police Officer, showed him my identification, and asked him to step out the car. He hesitated for I guess a good minute or so before he put his feet on the ground then he sat up on the driver's side of the car. As he did that I patted his pants pocket and as I put my hand on his pants pocket he reached up with his right hand, and he had on a light colored white shirt, he grabbed a clear plastic bag with his right hand, hit me with his left hand and put his back towards me. I grabbed him hollering to my partners, `Watch out. He has something.' And a struggle took us around to the back side of the car on the sidewalk, against the building, onto the sidewalk before we were able to subdue him and we handcuffed him. When I stood him up I checked his hands and the bag was gone. I told them to look around the car and all that he had to throw it in the vicinity. We looked on the ground and we look (sic) all around and we couldn't find it. At this time, I conducted a search of him, found the bag, right inside his waistband where he had placed it during the struggle. When he turned around, he placed the bag in his waistband. I retrieved the bag ..."
The defendant claims that after he fell asleep the following events ensued:
"... and I ended nodding by (sic) head when I was behind the wheel. The next thing I remember the door was unlocked. My door on my side was unlocked and I was being just pulled out of the car about five or six individuals who just yanked me out the car and threw me against it. I was still kind of sleepy and I tried to turn around to ask what was going on and I was hit by one of these individuals. At that time, this is when I turned back around and the struggle began. We struggled from that point in the car to around the back where I was tripped over the curb and knocked to the ground. I was kicked in the head and in the side several times. One was on this arm and one on the other. They forced my arms around the back of me and handcuffed me from the back. I was then picked up and patted down. My money and I.D. was taken out of my back pocket. One of the Officers just took it out, opened it up and took the money and the I.D. and slipped it into his pocket. Around that time a blue and white car had pulled up and I was placed in the back of this car and taken off. At that time, I saw them going through the car as I was leaving in the blue and white car. They were searching the inside of the car and they had opened the trunk and they were going through it. The next time I saw these individuals was down at the Homicide Division where I was taken by the uniformed Officers."
The plastic bag found on the defendant contained white powder which proved to be phencyclidine.

ASSIGNMENT OF ERROR
Defendant has assigned only one error. The defense contends that the trial court erred in denying the motion to suppress the evidence seized in a warrantless search of the defendant's person. The defense argues that the search did not qualify as a search incident to an arrest or an investigatory stop and frisk. The alleged error is broken down into the following contentions:
1. At the time defendant was ordered from his car and patted-down no probable cause existed for his arrest.
2. The search of defendant's person cannot be justified as incidental to an arrest for resisting an officer.
3. Assuming that the police may have been justified in investigating the defendant, the pat-down search which ultimately culminated in the seizure of the evidence was illegal.
*696 Inasmuch as the defendant entered a plea of guilty following the denial of his motion to suppress the evidence with a reservation of his right to appeal that issue under State v. Crosby, supra, the factual questions relate only to the validity of the search and seizure. The trial court evidently accepted Officer Melancon's version of the facts rather than the defendants. The question turned on credibility and we find no error in the trial court's finding to which we must give great weight. State v. Kent, 371 So.2d 1319 (La. 1979).
The United States and Louisiana Constitutions prohibit unreasonable searches and seizures. U.S.Const. Amend. 4; La.1974 Const. Art. 1, § 5. These provisions prohibit all warrantless searches, except in limited and exigent circumstances established by well-recognized exceptions. State v. Aguillard, 357 So.2d 535 (La.1978); State v. Lain, 347 So.2d 167 (La.1977). The State has the burden of proving the admissibility of any evidence seized without a warrant. LSA-C.Cr.P. art. 703(D); State v. Bazile, 386 So.2d 349 (La.1980); State v. Franklin, 353 So.2d 1315 (La.1978).
In State v. Wade, 390 So.2d 1309 (La. 1980) we said:
"The landmark case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), established that the constitution permits a police officer to investigate possible felonious criminal behavior by temporarily stopping and questioning a suspect where there is reasonable cause to believe that a crime has been or is about to be committed. This `stop' can be effected even though there is not sufficient probable cause to subject the suspect to a full custodial arrest. Further, a police officer has the right to conduct a limited `frisk' for weapons after making the investigatory stop when he has drawn a specific reasonable inference from facts and experience that he is dealing with an armed and dangerous individual. The principles embodied in Terry and its progeny provide the constitutional basis for C.Cr.P. art. 215.1, the Louisiana `stop and frisk' statute."
The facts of this case do not fall specifically within the rationale of the Terry progeny. Officer Melancon testified that he initially approached the defendant slumped over the steering wheel because he thought the defendant might have been injured, as opposed to being suspicious that defendant had just committed a crime. The officer stated that he did not initially intend to arrest the defendant. We feel that a person slumped over a steering wheel in a vehicle with the engine running, at 3:00 AM in the French Quarter of New Orleans provides an officer with sufficient reasonable suspicion to make an investigatory stop short of an arrest.[1] Whether the officer thought the person was injured, asleep, intoxicated or drugged, the officer was entitled to further investigate the situation.
This court has defined reasonable cause sufficient to justify an investigatory stop. We have said that reasonable cause to justify an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Chopin, 372 So.2d 1222 (La.1979); State v. Taylor, 363 So.2d 699 (La.1978); State v. Dixon, 337 So.2d 1165 (La.1976); and State v. Weathers, 320 So.2d 892 (La. 1975).
Inasmuch as Officer Melancon was entitled to awake the defendant the issue becomes whether the ensuing search was within lawful bounds. Officer Melancon stated that upon awakening the defendant, he conducted an initial pat-down search for weapons. In State v. Wade, supra, this court upheld a Terry-type frisk in the French Quarter which revealed a handgun, after noting that the French Quarter is a high crime area especially noted for violent crimes. Under Wade Officer Melancon had *697 sufficient basis to conduct this initial pat-down frisk.
Considering the circumstances we do not think it was at all unreasonable for Officer Melancon to attempt to pat-down the defendant when the latter began to swing his legs out of the car. Several possibilities could reasonably have suggested themselves to Officer Melancon. Officer Melancon might have concluded, for example, that the defendant had been injured or was sick, intoxicated or drugged.
Officer Melancon did not know what the problem was, but he testified that after arousing the defendant, the defendant was either dazed or intoxicated and he took some time before responding by beginning to move. Tr. 12 and 13. A reasonable person could easily fear the possibility of a violent response under such circumstances. The officers were in plain clothes although defendant had been informed by Officer Melancon that he was a police officer and was shown his I.D. card. Nevertheless, Officer Melancon could have easily anticipated that the defendant might react defensively for several reasons. Defendant might have assumed that he was about to be robbed or be made the victim of foul play. The question is not what defendant actually thought, but rather what Officer Melancon could reasonable anticipate that defendant might think upon being suddenly waked up from sleep or possibly stupor.
This court said in State v. Hunter, 375 So.2d 99 (La.1979):
"While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a `reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger.' Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's belief is not reasonable unless the officer is `able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.' Sibron v. New York, 392 U.S. at 64, 88 S.Ct. at 1903, 20 L.Ed.2d at 935. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a `substantial possibility' of danger. See Comment, Terry Revisited: Critical Update on Recent Stop-and-Frisk Developments, 1977 Wis.L.Rev. 877, 896."
We conclude that the pat-down begun by Officer Melancon was justified and was not unlawful.
Inasmuch as the initial stop and frisk were lawful, subsequent events justified the search which revealed the bag of phencyclidine tucked into the waistband of defendant's pants. It was the sudden precipitate action of the defendant in reaching up inside the car and taking the plastic bag, exposing it to Officer Melancon's view, and his action in striking the officer with his left hand and then turning to conceal the plastic bag which provided probable cause for subduing the defendant and searching his person.
After Officer Melancon was assaulted he was entitled to arrest the defendant. Upon resisting arrest he was entitled to arrest the defendant for resisting arrest. The subsequent search was then justified as a search incident to an arrest under Article 213 of the Louisiana Code of Criminal Procedure.[2]

*698 DECREE
For the reasons assigned the conviction and sentence are affirmed.
AFFIRMED.
DIXON, C.J., concurs with reasons.
DIXON, Chief Justice (concurring).
I respectfully concur.
Under the circumstances of this case the officer was justified in the initial entry of the car and pat-down of defendant.
NOTES
[*] Judges J. Burton Foret, Jimmy M. Stoker, and P. J. Laborde, of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, and Jack C. Watson.
[1] State v. Neyrey, 383 So.2d 1222 (La.1980).
[2] Article 213 of the Louisiana Code of Criminal Procedure provides as follows:

"A peace officer may, without a warrant, arrest a person when:
(1) The person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor it must be made immediately or on close pursuit;
(2) The person to be arrested has committed a felony, although not in the presence of the officer;
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; or
(4) The peace officer has received positive and reliable information that another peace officer holds a warrant for the arrest.
A peace officer in close pursuit of a person to be arrested, who is making an arrest pursuant to this article may enter another jurisdiction in this state and make the arrest."