485 So.2d 555 (1986)
STATE of Louisiana
v.
Morris LEE, III.
No. 85-K-604.
Court of Appeal of Louisiana, Fifth Circuit.
March 10, 1986.
*556 A. Bruce Netterville, Gretna, for defendant-relator-appellant.
Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff-respondent-appellee.
Before CHEHARDY, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This matter relates to a writ of review and a stay order which was granted by another panel of the Fifth Circuit Court of Appeal on October 25, 1985. On application for writs, a writ of review was granted by that panel on November 7, 1985. On review is the conviction of the defendant, Mr. Morris Lee, III, for a violation of La. R.S. 40:966(C), possession of marijuana. We reverse and set aside the conviction.
ISSUE
The principal issue raised is whether the trial court erred in not suppressing the evidence (seized marijuana).
ANALYSIS
In exercising our standard of review, we note the circumstances under which a police officer may stop a person for questioning are both constitutionally and statutorily constrained. Louisiana Code of Criminal Procedure article 215.1 is a distillation of the constitutional jurisprudence which holds that:
The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct.
State v. Chopin, 372 So.2d 1222, 1224 (La. 1979). Reasonable cause amounts to something less than probable cause and
must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference.
State v. Chopin, supra. Absent reasonable cause bestowing the right to make an investigatory stop, "property abandoned or otherwise disposed of as a result thereof cannot be legally seized" by police. State v. Chopin, supra.
Information received from a confidential informant can form at least part of the premise of reasonable cause. In State v. Dixon, 337 So.2d 1165 (La.1976), a police officer received specific information from a confidential informant who on previous occasions had supplied information resulting in prosecutions. The informant described the car to be used to transport narcotics, identified who would be transporting them, and called back to say the trip was imminent. After observing the car leave the designated residence, police stopped the suspect at a hamburger stand. Given these facts, the Louisiana Supreme Court reasoned that *557 [t]he officers in the instant case had reliable information that the defendant would be transporting narcotics in the Dodge Charger. The informant was known to Officer Bailey personally and had provided him with information in the past which had led to prosecutions. It is clear that, under circumstances such as these, an informant's tip can provide reasonable cause to detain and question a suspect.
State v. Dixon, supra at 1167. In the wake of Dixon, the Louisiana Supreme Court has held that even an anonymous tip can provide the legal basis for a stop, concluding that
an anonymous tip can provide the basis of an investigatory stop. However, the information received from the anonymous tipster must carry enough indicia of reliability, such as specificity of the information and corroboration by independent police work, to justify the stop.
State v. Jernigan, 377 So.2d 1222, 1225 (La.1979), cert. denied sub nom. Jernigan v. Louisiana, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980).
Once there is a premise for an investigatory stop, there may or may not be reason sufficient to frisk a suspect. State v. Wade, 390 So.2d 1309, 1312 (La. 1980). Citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Louisiana Supreme Court in Wade summarizes that
[t]he purpose of allowing a limited weapons search is to prevent harm to police officers by allowing action prior to a crisis stage. Police officers are not required to stand by and give a suspect the first move before taking action. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Equally important is the protection of the suspect, presumed innocent by law, from the harm that could result to him should he naively do an act interpretable as reaching for a weapon at a time when a police officer may reasonably suspect the presence of a weapon.
State v. Wade at 1312-13 (citations omitted). Even present a lawful stop, an officer "`is justified in frisking the subject [of the stop] only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger."'" State v. Keller, 403 So.2d 693, 697 (La.1981) (quoting Terry v. Ohio, supra, 88 S.Ct. at 1883). Such belief "is not reasonable unless the officer is `able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.'" State v. Keller at 697 (quoting Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968)). The officer need not prove that more probably than not the detainee was armed and dangerous but need only establish a substantial possibility of danger. State v. Keller at 697. Once a lawful arrest is made based on probable cause, a warrantless search incident thereto of both the person detained and the area within his immediate control is permissible. State v. Andrishok, 434 So.2d 389 (La. 1983).
The record shows that on May 20, 1985, just after midnight, Deputy David Shaver, Deputy C.L. Bordelon, and Sergeant Edith Evans of the Jefferson Parish Sheriff's Office were patrolling in three separate units when they received a radio broadcast stating that an anonymous 911 complainant had reported that two Negro males were attempting to sell a half-case of "weed" (marijuana). The complainant gave the vehicle license number, said it was a black car, and reported it was located at the corner of Ames and Barataria Boulevard. The three sheriff's units were, at that point, neatly aligned in front of each other about a half block from the reported location and proceeded there immediately, more or less surrounding the suspect car. This confrontation occurred at 2698 Barataria Boulevard in the parking lot of a Time-Saver. The suspect car was black, with the appropriate license number, and was occupied *558 by two Negro males. In addition, a Negro female occupied the rear seat. (It developed that she worked at the Time-Saver and had just gotten off work. She was released without charges.)
After driving up, the deputies "asked" the suspects to exit their vehicle, which they did immediately and without incident. All occupants were questioned, the males being directed to the rear of the sheriff's unit behind the suspect car. No altercations or exigent circumstances appear in the wake of the confrontation. Nevertheless, Sergeant Evans went over to the suspect car, looked inside, and removed a backgammon case containing marijuana. Upon its discovery, reports Deputy Shaver, the males were arrested. On cross-examination, Deputy Shaver adds, none too specifically, that on his approaching the car there was what "appeared to be marijuana smoke" in the air. Deputy Shaver reports he has smelled marijuana before and can identify it.
Only after the cigarettes were found was a consent to search obtained before searching the trunk, which apparently produced nothing further. In light of trial admissions, the police report incorrectly indicates that the marijuana was discovered after consent to search was obtained. Deputy Shaver never saw the defendant holding the backgammon case.
Sergeant Evans testified that after the suspects were removed to the rear, she walked up to the car and looked for a case. As she approached the passenger side, the door was closed with the window down. Poking from beneath the front passenger seat was the brown backgammon case. Upon spotting it, she opened the door, removed the casewhich was closedand opened it. Inside were the marijuana cigarettes. Except for the case, the car floorboard was clean. The car had bucket seats; the case extended about four inches into view from beneath the seat.
Ms. Leslie Morris, the female against whom no charges were filed, testified that all three occupants exited the car and stood with their hands on a sheriff's unit, as instructed. She reports she had been sitting and talking to the males for about five minutes and saw no marijuana there. She alone smokedan ordinary cigarette.
On his own behalf, the defendant testified he was riding around with the suspect driver because the driver had that day taken him to the plant in Harvey (Manpower) where he (the driver) worked so that the defendant could see about obtaining employment. He maintained he had not seen either the marijuana or the backgammon case that day. He was enroute to the bus station, where he planned to leave on the last Greyhound bus to Hammond at about 12:30 p.m. Mr. Lee had known the driver, Mr. Donald R. Loston, about eight months.
After a careful review of the record in its entirety and bearing in mind our statutory and jurisprudential guidelines, it appears that reasonable cause to stop probably did not exist at the time of the deputies' grand swoop. Neither an identified caller nor any police corroboration exists to buttress the scant facts anonymously supplied. Casually allowing police officials to stop and search someone on the basis of any telephone call wherein the caller makes an accusation (anonymously) and supplies a few innocent details is dangerous to individual liberty, inviting of manipulation of police power by anonymous callers, and wholly open to abuse by the police themselves.
Even if we assume the presence of reasonable cause to stop the defendant, we find, at best, a frisk-search incident to the stop was permissible provided a reasonable, prudent man would be warranted in the belief that his safety or that of others was in danger. However, the record is devoid of even a hint of belligerence from the defendant or the other parties in the vehicle. Nor, in fact, is even tardiness, if you will, in obedience to the police officers at all indicated. Accordingly, it would take unabashedly strained imagination to construe a reason for even a frisk, unless one considers that the darkness could have been a factor, which argument is not even attempted by the State. More importantly, *559 the record does not suggest that frisking took place; only the car was searched, at a time when the suspects were so far away from the car and its contents that these can no way be construed into even a colorable threat to the officers. Absent the existence of a legally conducted search and its fruits, there remains no reason at all for the arrest of the defendant. Accordingly, the car search can only be incident to a groundless, hence illegal, defacto arrest. The spoils of such search must be suppressed.
As a result of our finding that the trial court erred in not suppressing the evidence seized in the warrantless search, we set aside the conviction of the defendant.
Finally, we note that the defendant in brief raises also the issue of whether the evidence was sufficient to convict. Since we have reversed the conviction in this case on other grounds, it should be noted that we have concluded that our suppression analysis disposes of the case. We specifically do not decide the sufficiency issue raised, reserving to the defendant a double jeopardy claim should the State elect to retry him. La.C.Cr.P. art. 532. See United States v. Sneed, 705 F.2d 745, 747-49 (5th Cir.1983).
For the reasons assigned, we find the trial court erred in failing to suppress the evidence seized and accordingly reverse that ruling of the trial court. We also set aside the conviction of the defendant.
REVERSED AND SET ASIDE.