520 So.2d 1229 (1988)
STATE of Louisiana
v.
Walter LEE.
No. 87-KA-619.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
*1230 Bruce G. Whittaker, Gretna, for defendant/appellant.
Louise Korns, of counsel, Office of the District Atty., Ronnie Bodenheimer, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, for State.
Before KLIEBERT, BOWES and GOTHARD, JJ.
BOWES, Judge.
The defendant, Walter Lee (also known as Walter Lee Bailey), was arrested for knowingly and intentionally possessing a controlled dangerous substance, to wit: less than 28 grams of cocaine in violation of LSA-R.S. 40:967. After several delays, the defendant went to trial and was convicted by a unanimous verdict. He was subsequently sentenced to two years in the Jefferson Parish Correctional Center. We affirm.
The facts of this case are as follows:
On October 14, 1984, at approximately 2:30 a.m., the Jefferson Parish Sheriff's office received a complaint of a black male in the area of 1100 block of Sandalwood carrying a weapon. Several units responded to the call. Sergeant Riseden advised the others that there was a vehicle coming down the streets with its lights off. There were three persons in the vehicle when it was stopped by Sergeant Riseden. All three persons exited the vehicle with their hands up. They were told to turn around and put their hands on the vehicle. Officer Robert Nagy was the second unit which arrived on the scene and he performed a pat-down search for weapons on the defendant. During the search of Walter Lee (Bailey), a small piece of plastic was observed protruding from his pocket and a small bulge in this pocket was felt by the officer as he conducted his "pat-down". When the plastic bag was pulled out of Lee's pocket by the officer, it contained a white powdery substance thought by the officer to be cocaine and verified as such shortly thereafter. Mr. Lee (Bailey) was then arrested. On search of the vehicle, two weapons were discovered, both .38 calibre. Defendant, Walter Lee (Bailey) was arrested and charged with possession of less than 28 grams of cocaine.
Defendant presents only one assignment of error:
1. The trial court erred in denying appellant's motion to suppress the evidence.
*1231 Assignment of Error No. 1
The defendant argues that there was no probable cause for the investigatory stop or, at least, no reason for the officers to believe that the defendant was armed and dangerous. Consequently, he takes the position that the officer's weapon pat-down was unlawful and/or that the cocaine seized as a result of the pat-down was unlawfully seized.
The circumstances under which a police officer may stop a person for questioning are defined by both statute and the Constitution, as well as our state and federal jurisprudence. We are initially guided by LSA-C.Cr.P. Art. 215.1, which holds:
Art. 215.1 Temporary questioning of persons in public places; frisk and search for weapons
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
In State v. Flowers, 441 So.2d 707 (La. 1983), cert. denied 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984), the Louisiana Supreme Court extensively articulated the standard to be applied in Louisiana for investigatory stops. The court held:
[1-4] The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); Terry v. Ohio, 392 U.S. 1, 16-19, 88 S.Ct. 1868, 1877-1878, 20 L.Ed. 2d 889 (1968). Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention is quite brief. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person, Terry v. Ohio, supra 392 U.S. at 16, 88 S.Ct. at 1877, and the Fourth Amendment requires that the seizure be "reasonable." United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). Because of the limited nature of seizures less intrusive than a traditional arrest, however, stops of this sort may be justified on facts that do not amount to the probable cause required for an arrest. Instead, the conduct involved must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures. Terry v. Ohio, supra 392 U.S. at 21, 88 S.Ct. at 1879; Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); United States v. Brignoni-Ponce, 422 U.S. at 880-882, 95 S.Ct. at 2579-2580.
[5-8] In order to assess the reasonableness of such official conduct as a general proposition, it is necessary first to focus on the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interest of the private citizen, for there is no ready test for determining reasonableness other than by balancing the need to search or seize against the invasion which the search or seizures entails. Terry v. Ohio, supra 392 U.S. at 20, 88 S.Ct. at 1879; Camara v. Municipal Court, 387 U.S. 523, 534-535, 87 S.Ct. 1727, 1733-1734, 18 L.Ed.2d 930 (1967). And in justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken *1232 together with rational inferences from those facts reasonably warrant that intrusion. United States v. Brignoni-Ponce, supra 422 U.S. at 884, 95 S.Ct. at 2581. The conduct of those charged with enforcing the laws is subject to themore detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment, the facts must be judged by an objective standard: would the facts available to the officer at the moment of seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate? Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result which the United States Supreme Court has consistently refused to sanction. United States v. Cortez, supra 449 U.S. at 417-418, 101 S.Ct. at 694-695. And simple good faith on the part of the arresting officer is not enough. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate and the people would be secure in their persons, houses, papers and effects only in the discretion of the police. Terry v. Ohio, supra; Beck v. Ohio, 379 U.S. 89, 96-97, 85 S.Ct. 223, 228-229, 13 L.Ed.2d 142 (1964).
[9, 10] Thus, there are at least three inquiries involved in determining whether a seizure was a valid investigatory stop: (a) whether the intrusion was an arrest or a stop; (b) whether the stop was of a type which is reasonable in view of the public interest served and the degree of invasion entailed; and (c) whether the particular stop was warranted by a reasonable suspicion based on specific, articulable facts and rational inferences from those facts.
In the present situation, we are cognizant of the fact that this stop took place at approximately 2:45 a.m., in a high crime neighborhood known for drug-trafficking, facts which were known to the officers, who were searching for a man who was seen and had been reported to them to be carrying a dangerous weapon. Once the car in which the defendant was riding was stopped, the officers used no force in getting the defendant from the car; rather all three occupants voluntarily exited the automobile and put their hands on their heads. The officers were justified in requesting identification and an explanation of their conduct, i.e., driving slowly through this high crime area at that time of the morning without headlights. Certainly these are suspicious circumstances. Based on these facts, we find that the initial stop did not constitute an arrest but was, in fact, a valid Terry-type investigatory stop properly grounded on circumstances which gave rise to reasonable suspicion by the officers, based on specific, articulable facts and rational inferences from those facts.
A limited frisk or pat-down weapons search incident to an investigatory stop may be conducted in order to prevent harm to the police officers and ensure their safety. State v. Wade, 390 So.2d 1309 (La. 1980) Cert denied 451 U.S. 989, 101 S.Ct. 2326, 68 L.Ed.2d 848 (1981); State v. Lee, 485 So.2d 555 (La.App. 5 Cir.1986). The circumstances under which an officer may make such a pat-down for weapons must be based on whether or not a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger. State v. Keller, 403 So.2d 693 (La.1981). Such belief "is not reasonable unless the officer is `able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous'." State v. Keller, id at 697 (quoting Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). In the instant case, the officers were specifically searching for a man who had been actually seen, just minutes earlier, carrying a dangerous weapon within a neighborhood known to them to be dangerous. Consequently, we find the officers were completely justified, under these circumstances, in doing a weapons search upon the defendant.
Appellant next contends that the officers exceeded the permissible scope of a *1233 pat-down by reaching into his back pocket to remove an object which he had reason to believe was contraband and not a weapon. We disagree.
This court held in State v. Bearden, 449 So.2d 1109 (La.App. 5 Cir.1984) Writ denied 452 So.2d 179 (La.1984) (quoting from LaFave, Search and Seizure, A Treatise on the Fourth Amendment, 1984 pocket part, Sec. 9.4 p. 66):
Assuming the object discovered in the pat-down does not feel like a weapon, this only means that a further search may not be justified under a Terry analysis. There remains the possibility that the feel of the object, together with other suspicious circumstances will amount to probable cause that the object is contraband or some other item subject to seizure, in which case there may be a further search based upon that probable cause.
There, this court went on to hold that because the object felt during the pat-down search could be tactilely-identified as a large quantity of pills, the evidence would be admitted.
In the instant case, at the trial, Sergeant Nagy, who conducted the pat-down search and who was also the arresting officer, testified, without contradiction, as follows:
Q. And during the patdown search, did anything become unusual?
A. I observed a piece of plastic sticking out of his back pocket, looked like the corner of a baggy, typical baggy, and while patting down the back pocket, I felt a bulge in the pocket which seemed to be relatively close to the baggy. At which time I pulled on the baggy and the bulge came out.
Q. What was in the bulge?
A. A white powdered substance.
Q. What did you do with it?
A. I retrieved it. At which time the subject was handcuffed and advised of his rights and I contacted a narcotics agent.
. . . . .
Q. Okay. In your five years as a police officer, have you ever had occasion to feel bulges that ended up being something potentially harmful to you?
A. Yes, sir.
Q. Give me a for instance.
A. A bulge I found inside a bulge was a razor blade wrapped inside of a bandana or clothes. Other instances, bullets have been wrapped inside of a handkerchief.
This uncontradicted testimony leads us to conclude that this officer's removal of the plastic bag and further search was justified and legally valid for either of two reasons.
First, the officer's previous experience logically led him to believe that he had tactilely identified what could be a weapon.
Second, it is common knowledge among policemen that cocaine, marijuana, and most drugs are carried by drug dealers in plastic bags and that cocaine and other powdery drugs form a lump or bulge inside the plastic bag.
Therefore, once Sergeant Nagy saw the plastic bag protruding from the defendant's pocket and felt a bulge inside of it, he then had probable cause to suspect the bag contained drugs and to remove the bag to search further. This is especially true under all the circumstances enumerated above, with particular emphasis on the fact that the officer testified further that he knew they were in a high crime neighborhood, which had a reputation for heavy drug-traffic, and it was 2:45 a.m., so they were scrutinizing the area closely. It follows then that once the cocaine was found, there was probable cause to arrest the defendant. State v. Bearden, supra.
Additionally, we note a recent case, U.S. v. Aguiar, 825 F.2d 39 (4th Cir.1987), in which the defendant was convicted of possession of cocaine with intent to distribute. Defendant was stopped in an airport after two concerned citizens reported to police officers defendant's activity on the plane and the officers noticed a large bulge on defendant's ankle and some white plastic showing beneath the cuff of his left trouser leg. The court held:
There was the large bulge at the left ankle and the piece of white plastic that could be observed when Augiar [sic] walked coupled with the testimony that *1234 Harky observed others with such bulges and that the bulge had always turned out to be packets of illicit drugs. Nor can the observed bulge and white plastic be dismissed as just another drug courier profile characteristic. For a variety of reasons, many innocent persons would exhibit some or even many of those characteristics, but few innocent people carry treasures in packets wrapped in plastic and strapped to their ankles. A United States Navy enlisted man in uniform without pockets may carry a package of cigarettes in his socks, but Augiar [sic] was not in any such uniform. If other innocent people carry precious possessions in packets strapped to their ankles, they must be extremely rare.
We agree with this reasoning and find it applicable to the instant case.
We have reviewed the record for errors patent and found none.
Accordingly, for the reasons assigned, we find that the ruling of the trial court on the motion to suppress was correct. Consequently, the defendant's conviction and sentence are affirmed.
AFFIRMED.