538 So.2d 1087 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Robert L. BORDELON, Defendant-Appellant.
No. CR88-561.
Court of Appeal of Louisiana, Third Circuit.
February 8, 1989.
Rehearing Denied March 13, 1989.
*1088 Clifford Newman, Ulysses Thibodeaux, Newman & Thibodeaux, Lake Charles, for defendant-appellant.
Wayne Frey, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
DOUCET, Judge.
This appeal arises out of defendant's arrest for possession of marijuana with intent to distribute, a violation of La.R.S. 40:966, and for operating a motor vehicle while his license was suspended, a violation of La.R.S. 32:415. The trial court denied defendant's motion to suppress physical evidence *1089 and his motion to release seized property. Defendant then entered a guilty plea, expressly reserving the right to appeal the trial court's denial of these motions.[1] Defendant was sentenced to seven years at hard labor. Defendant now seeks review of the trial court's rulings based on two assignments of error, the first being that the trial court erred in denying defendant's motion to suppress physical evidence, and the second being that the trial court erred in denying defendant's motion to release seized property.
FACTS:
On March 12, 1987, a state police narcotics agent received information that appellant, Robert Bordelon, was distributing substantial quantities of marijuana in Lake Charles. The officer was informed that the appellant was expecting a large shipment in the near future. The agent began to monitor the activities of appellant. At approximately 4:45 p.m., appellant left the office of his attorney and proceeded to a grocery store where he made a brief telephone call. Appellant then drove to a bank, entered the building, and returned to his vehicle a short time later. After making a brief visit to his mother's home, appellant then proceeded to a nearby Wendy's restaurant. Appellant entered the restaurant and returned with an unidentified male. The two spoke by the passenger side of appellant's vehicle for a brief period and then entered the vehicle. The vehicle was observed driving in a southerly direction, turned around and headed in a northerly direction on the same highway. The vehicle proceeded to a K-Mart parking lot a short distance from the Wendy's restaurant. The pair glanced around, then drove to a different corner of the same lot. Appellant exited the vehicle, again appeared to survey the surroundings and opened the vehicle's trunk. The appellant retrieved a brown paper bag from the trunk, visually scanned the area and re-entered the vehicle. The pair then drove a short distance to a self-serve gas station, "parked off by themselves," and again perused the surroundings. After a brief stop, the vehicle returned to the vicinity of the restaurant. The unidentified passenger exited the vehicle. The officer observed the passenger glance around furtively and noticed a bulge in his left front pocket. Appellant then apparently realized his vehicle was under surveillance. He began driving in an erratic manner, repeatedly accelerating for a short distance and then turning quickly onto other streets, in an apparent attempt to lose the surveillance vehicle. He then pulled into a parking lot in an attempt to hide from the surveillance vehicle. After a brief stop, appellant drove out of the parking lot and entered a public street. At that point, the officer activated his emergency lights and detained appellant's vehicle. The officer was aware throughout the surveillance that appellant was illegally operating the vehicle, as his operator's license had been suspended.
During the motion hearing, the officer stated the purpose of the stop was to question appellant concerning what the officer believed was a drug transaction or sale. The officer conducted a "pat down" search and discovered $1,500 on an unspecified part of appellant's person. Appellant informed the officer the money was to be used to pay for a fence recently constructed at his residence. Appellant also offered to "help" the officer provided appellant was released.[2]
The officer then requested appellant's consent to search the vehicle. When consent was denied, the vehicle was towed to the state police headquarters in Lake Charles. A dog trained to sniff for narcotics and which was previously used to successfully identify containers containing controlled substances was brought to the vehicle. The dog indicated the presence of narcotics in a bag found in the vehicle's *1090 passenger compartment and also indicated the presence of a narcotic odor emanating from the trunk.
At all times, the officer was aware of appellant's two previous narcotics convictions some ten years previous. The officer also knew appellant had a 1982 Calcasieu Parish arrest for possession of narcotics with intent to distribute. Based on the previous information, the investigating officer and the dog's handler executed an affidavit for a search warrant. The warrant was signed and the search of the vehicle resulted in the seizure of seven (7) pounds of marijuana and a weighing scale.
ASSIGNMENT OF ERROR NO. 1:
By this assignment of error, appellant contends the trial court erred in denying the motion to suppress the evidence seized. More particularly, appellant argues that the initial stop and arrest of appellant was not supported by probable cause so that evidence seized pursuant to the arrest must be excluded from evidence. Appellant also argues the information contained within the affidavit is insufficient to establish probable cause to search the vehicle.
INVESTIGATORY STOP/WARRANTLESS ARREST:
A police officer may temporarily detain an individual for investigation where there is reasonable suspicion that the person is committing, has committed or is about to commit a crime. Reasonable suspicion is something less than probable cause and is determined by whether the officer has sufficient knowledge of facts or circumstances to justify a limited infringement on the individual's right to be free from governmental interference. State v. Sims, 426 So.2d 148 (La.1983); State v. Keller, 403 So.2d 693 (La.1981). During an investigatory stop, the officer is justified in performing a limited "pat down" for weapons if the totality of the situation raises an inference of substantial possibility of danger. La.C.Cr.P. art. 215.1(B); State v. Alexander, 450 So.2d 61 (La.App. 3rd Cir. 1984). If an officer, conducting a valid frisk, feels an object he has probable cause to believe is contraband, he may seize that object. State v. Washington, 501 So.2d 1086 (La.App. 2nd Cir.1987).
Where an individual is arrested without probable cause, the evidence seized subsequent to the arrest is inadmissible at trial. State v. Andrishok, 434 So.2d 389 (La.1983). Arrest occurs when circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293 (La.1985); State v. Freeman, 503 So.2d 753 (La.App. 3rd Cir.1987). Probable cause to arrest exists when the facts and circumstances within an officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed an offense. State v. Elliot, 407 So.2d 659 (La. 1981). Although mere suspicion is insufficient to justify an arrest, a police officer need not have sufficient proof to convict in order to arrest. State v. Brown, 507 So.2d 304 (La.App. 3rd Cir.1987). The circumstances must show that criminal activity is more probable than noncriminal activity. Equivocal conduct does not afford probable cause for arrest, where the possibility of criminal conduct is no greater than the possibility of innocent behavior. State v. Jordan, 506 So.2d 230 (La.App. 4th Cir. 1987).
In the instant case, the officer received information that appellant was selling narcotics. The officer was aware of appellant's criminal past and began surveillance to corroborate the information. The actions of appellant in visiting an attorney, a public pay phone, a bank, and his mother's home raise no suspicion of criminal activity. However, appellant then picked up an unidentified individual at a Wendy's restaurant, drove a circuitous route to a parking lot close to the restaurant and parked in two different areas of the lot. Appellant exited the vehicle, retrieved a paper bag from the trunk, and drove to yet another location. After a brief stop, the vehicle returned to the area of the restaurant where the passenger exited the vehicle *1091 with a bulge in his pants pocket. The two occupants of the vehicle were reported to repeatedly scan each area where they stopped. Upon realizing he was under surveillance, appellant sought to evade the officer.
Flight and nervous glances by themselves are insufficient to justify an investigatory stop. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). However, coupled with other suspicious activities witnessed by the officer, the officer's knowledge of appellant's prior criminal record regarding narcotics activity, and the officer's lengthy experience in narcotics investigations, it appears the initial stop of appellant was justified.
Unlike appellant's assertion, the circumstances do not indicate an intent by the officer to effect an extended restraint on appellant's liberty upon the initial stop. It was only after the discovery of the substantial sum of money, after the refusal to consent to search of the trunk, and after appellant's offer to "make a deal" that an arrest occurred. We find that probable cause did exist at that point.
The officer in the instant case had an extensive background in narcotics investigations. The officer believed a drug transaction had taken place and called for assistance as the unidentified passenger left the vehicle. Considering the inherent danger in stopping individuals involved in possible narcotics trafficking and the fact that the officer had no assistance at the time, the protective search was justified under the circumstances. The seizure of the substantial quantity of currency was justified, as it was likely to be involved in the apparent drug transaction being investigated and the appellant was known to be unemployed at the time. The officer was then denied permission to search the vehicle's trunk and appellant offered to "help" the officer if the officer would let him go free. The totality of the facts known to the officer, judged by the probabilities and practicalities of everyday life, justified a full custodial arrest of appellant. Although the officer did not possess sufficient evidence to convict at that point, the arrest was not based on mere suspicion. Appellant's conduct was observed over an extended period of time. These activities were more than equivocal and would suggest to an individual of average caution that the actions are more likely to involve criminal rather than innocent activities. Therefore, we find that appellant's assertion that the arrest was effectuated without probable cause is without merit.
VALIDITY OF SEARCH WARRANT:
A search warrant may issue only upon an affidavit establishing probable cause to the satisfaction of a neutral magistrate. La.C.Cr.P. art. 162; State v. Klar, 400 So.2d 610 (La.1981). Probable cause exists when the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. State v. Morris, 444 So.2d 1200 (La.1984); State v. Lewis, 442 So.2d 1159 (La.App. 3rd Cir.1983), writ denied 444 So. 2d 1214 (La.1984); State v. Upchurch, 510 So.2d 112 (La.App. 3rd Cir.1987). Generally, the facts establishing the existence of probable cause must be contained within the "four corners" of a search warrant affidavit. State v. Duncan, 420 So.2d 1105 (La.1982); State v. Daniel, 373 So.2d 149 (La.1979).
The task of the reviewing court is simply to insure that the magistrate had a substantial basis for concluding that probable cause existed. A magistrate's determination of probable cause should be accorded great deference by a reviewing court. State v. Lewis, supra. In doubtful cases, the preference of the court of appeal should be to uphold validity so as to encourage law enforcement officials to submit evidence to a judicial officer before acting. State v. Watson, 423 So.2d 1130 (La.1982), appeal after remand, 449 So.2d 1321 (La.1984), cert. denied 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).
The information in the search warrant affidavit includes most of the factors *1092 used to find probable cause to arrest.[3] The affidavit also includes the statement that the police dog indicated the presence of narcotic odors emanating from the bag in the passenger compartment as well as from the vehicle's trunk. Based on the facts and circumstances presented in the affidavit, the issuing magistrate had a substantial basis for concluding that contraband would be found at the place to be searched. Therefore, we find that appellant's assertion that the affidavit for the search warrant was legally insufficient is without merit.
ASSIGNMENT OF ERROR NO. 2:
By this assignment of error, appellant alleges the trial judge erred in not granting the motion to release the currency seized at the time of appellant's arrest. Appellant argues that the currency would not have been relevant in the prosecution of the instant offense and should not be forfeited because the state failed to establish that the money was contraband as required by the recent holding in State v. Spooner, 520 So.2d 336 (La.1988).
In order to rule on appellant's assignment, it is important to recognize the procedural posture of this case at the time of the trial court's ruling. Appellant filed a motion for release of seized property specifically alleging that the currency was neither contraband nor was it to be used as evidence. The hearing denying this motion was held February 10, 1988. Appellant pleaded guilty subsequent to the hearing. After the guilty plea, the State of Louisiana filed a forfeiture hearing.
La.C.Cr.P. art 167 provides:
"When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge."
La.R.S. 15:41 states, in pertinent part:
"A. If there is a specific statute concerning the disposition of the seized property, the property shall be disposed of in accordance with the provisions thereof.
"B. If there is no such specific statute, the following governs the disposition of property seized in connection with a criminal proceeding, which is not to be used as evidence or is no longer needed as evidence:
"(1) The seized property shall be returned to the owner unless a statute declares the property to be contraband."
La.R.S. 32:1550 providing for the forfeiture of property defines contraband and subjects property to seizure and forfeiture if used to facilitate sale or possession of illegal narcotics.
No person may be deprived of personal property except by due process of law. The citizen has the constitutional right to enjoy his private property subject to reasonable statutory restrictions and the reasonable exercise of police power. La. Const. art. I §§ 2, 4; State v. Manuel, 426 So.2d 140 (La.1983). Both La.R.S. 15:41 and La.C.Cr.P. art. 167 represent reasonable statutory restrictions on the citizen's right to enjoyment of his property. These statutes do not authorize the release of property lawfully seized which the state intends to offer as evidence at trial. Any questions of relevance and connexity would be properly resolved at the trial and not by pre-trial motion for the property's release. State v. Garnier, 261 La. 802, 261 So.2d 221 (La.1972). The possibility of retrial after appellate review also justifies retention of property pending final disposition as the property may still be "needed as evidence." State v. Feeback, 434 So.2d 466 (La.App. 2nd Cir.1983).
At the motion hearing, defense counsel sought to establish the money seized was in appellant's possession for legitimate reasons unrelated to the controlled substances seized. In brief, appellant *1093 suggests the currency has no relevance to the crime charged and could not be introduced to prove possession with intent to distribute. As stated in Garnier, supra, these contentions present a defense on the merits and cannot be properly resolved at pre-trial hearings. The state's retention of the currency seized from appellant did not unconstitutionally deprive the appellant's right to private property. Taken in its procedural context, the trial judge did not err in denying appellant's pre-trial motion for release of monies seized during a narcotics arrest.
Finally, appellant argues that the trial court erred in ordering the forfeiture of the currency because the state failed to meet its burden of proving the currency was used or intended for use to facilitate narcotics trafficking. Appellant misinterprets the scope and effect of the court's ruling. As mentioned above, the purpose of the hearing held was to determine whether the state could retain the currency seized pending prosecution of the case. The hearing and order by the trial court did not result in the forefeiture of the currency to the state. Only a final judgment or ruling is appealable. La.C.Cr.P. art. 912. A forfeiture hearing is apparently pending regarding the currency involved. This court is without authority to rule upon the issue of forfeiture until final disposition in those forfeiture proceedings at which time the defendant's remedy would be to apply to this court for supervisory review.
We find that this assignment of error is without merit.
For the reasons assigned the judgment of the trial court is affirmed. All costs are assessed to defendant/appellant.
AFFIRMED.
NOTES
[1] See, State v. Crosby, 338 So.2d 584 (La.1976).
[2] Appellant does not raise as an issue whether the officer exceeded the scope of a permissible "stop and frisk" by seizing currency in what was ostensibly a protective search for weapons.

The information in this paragraph was not included in the search warrant and should not be used to test its validity. State v. Duncan, 420 So.2d 1105 (La.1982).
[3] As mentioned earlier, the warrant inexplicably excludes the information concerning the seizure of money and appellant's offer to "help" the officer in exchange for his release. Therefore, that information will not be considered in reviewing the magistrate's probable cause determination.