**Opinion issued July 2, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00807-CR

———————————

**ALLISON LEIGH CAMPBELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 12**
**Harris County, Texas**
**Trial Court Case No. 1923909**

---

### MEMORANDUM OPINION ON REHEARING

Appellant, Allison Leigh Campbell, was charged by information with driving while intoxicated. After the trial court denied her motion to suppress, Appellant pleaded guilty subject to the right to challenge the ruling on the motion on appeal. In four issues on appeal, Appellant argues the trial court abused its

discretion by denying her motion to suppress because the detaining officer lacked reasonable suspicion or probable cause to detain her.

On June 4, 2015, we issued our original opinion in this case. On June 17, 2015, Campbell filed a motion for rehearing. We deny the motion for rehearing, withdraw our prior opinion and judgment, and issue this opinion and a new judgment in their place. Our disposition remains the same.

We affirm.

## Background

Officer J. Pena was working his off-duty job as a security officer at a Wal-Mart early in the morning on October 13, 2013. At 1:00 A.M., he took a break and drove to the adjoining Taco Cabana to get some food. He ordered his food and pulled up behind three other cars in the line. Two cars moved forward in the line, but the car in front of Officer Pena remained in place. Officer Pena honked his car five times, but the car did not move.

Officer Pena stepped out of his car and approached the car in front of him. He saw Appellant asleep in the driver's seat and another person asleep in the front-passenger's seat. He tapped on the window repeatedly, and no one stirred. He then noticed the driver's side door was unlocked, opened the door, and shook Appellant multiple times. Appellant finally woke up.

2

After Appellant woke up, Officer Pena asked for her driver's license. Appellant gave it to him. Officer Pena pointed at a parking space and instructed Appellant to drive to it and park. At trial, Officer Pena testified that the space was 500 feet away. Appellant complied. Officer Pena kept Appellant's driver's license with him. He retrieved his food order and then parked next to Appellant.

He approached Appellant's car and began talking with her. This time, Officer Pena noticed the aroma of alcohol. After she noticed Officer Pena was not driving a marked patrol car, Appellant became verbally aggressive, cussing at him and claiming he was harassing her. Appellant opened the car door and stepped out. As she did, Officer Pena placed his hand on her. Appellant fell to the ground. Appellant stood up, but had trouble maintaining her balance. She fell again. Officer Pena then placed Appellant in handcuffs.

Officer Pena requested a back-up unit. A DWI unit came out and took over the investigation. Officer Pena had no further involvement in the investigation.

**Motion to Suppress**

Appellant argues in four issues that the trial court abused its discretion by denying her motion to suppress because Officer Pena lacked reasonable suspicion or probable cause to detain her. Specifically, Appellant argues (1) the initial encounter constituted an investigatory detention, (2) Officer Pena lacked the requisite indicia of criminal activity to conduct an investigatory detention, (3) the

second encounter constituted an arrest, and (4) Officer Pena lacked the requisite indicia of criminal activity to arrest her.

## A. Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for abuse of discretion and review the trial court's application of the law to the facts de novo. *Id.* Almost total deference should be given to a trial court's determination of historical facts, especially those based on an evaluation of witness credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012). At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Where, as here, a trial judge does not make explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We will defer to the trial court's fact findings and not disturb the findings on appeal unless the trial court abused its discretion in making a finding not supported by the record. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

4

**B.** **Analysis**

For the purposes of reviewing Fourth Amendment rights against unreasonable search and seizures, there are generally three categories of interactions between police and citizens: consensual encounters, investigatory detentions, and arrests. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). Each of these categories defines (1) the permissible level of intrusiveness of the officer's conduct and (2) the indicia of criminal activity needed to support that level of the officer's intrusion.[1] *See id.*

Consensual encounters consist of mutually voluntary conversations between an officer and another person. *See id.* "An officer is just as free as anyone to stop and question a fellow citizen," and the citizen is free to terminate the encounter at any time. *Id.* For consensual encounters, there does not need to be any indicia of criminal activity. *Id.*

Investigatory detentions consist of encounters where "an officer, 'by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *State v. Garcia-Cantu*, 253 S.W.3d 236, 242 (Tex. Crim. App. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968)). An

---

[1] Each of these categories also has a prescribed scope for a reasonable search. *See United States v. Robinson*, 414 U.S. 218, 228, 94 S. Ct. 467, 473 (1973) (recognizing greater restrictions on scope of search when probable cause does not exist). Appellant, however, has not challenged the scope of any officer's search in this appeal. Accordingly, the law on the permissible scope of a search is not pertinent to this appeal.

encounter with the police rises to the level of an investigatory detention if (1) the officer asserts his authority in a way that (2) would cause a reasonable person to believe she is not free to leave. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

For investigatory detentions, the officer must have reasonable suspicion of criminal activity in order to detain the person. *Castleberry*, 332 S.W.3d at 466. The officer has reasonable suspicion if he "has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). Such a conclusion is justified when the officer observes "unusual activity." *Id.* "These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Id.* The facts observed do not need to be criminal in nature themselves. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). They only need to lead to a reasonable conclusion that the person is, has been, or soon will be engaged in criminal activity. *Kerwick*, 393 S.W.3d at 273.

Finally, arrests consist of restrictions or restraints on a person's movement that is greater than investigatory detention or where no investigation is taking place. *See Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991). Whether

6

an investigatory detention elevates to an arrest depends on the facts and circumstances surrounding the detention. *Amores v. State*, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991); *Goldberg v. State*, 95 S.W.3d 345, 360 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). We look to the reasonableness of the officer's actions, which is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). "Whether a person is under arrest or subject to a temporary investigative detention is a matter of degree and depends upon the length of the detention, the amount of force employed, and whether the officer actually conducts an investigation." *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

For arrests, the officer must have probable cause. *Castleberry*, 332 S.W.3d at 466. "[P]robable cause for . . . arrest exists when facts and circumstances within the officer's knowledge *and* about which he or she has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense was or is being committed." *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005) (emphasis in original).

Appellant argues that, by holding on to her driver's license and by directing her to park her car in the parking lot, Officer Pena's interaction with her became an investigatory detention. She further argues that, when Officer Pena later placed

handcuffs on her, the encounter became an arrest. Finally, she argues that Officer Pena lacked the requisite indicia of criminal activity for either of these levels of encounters. We do not need to determine whether Officer Pena's retaining Appellant's driver's license elevated the encounter to an investigatory detention or whether his handcuffing Appellant amounted to an arrest. Even assuming Appellant is correct on both these points, we hold Officer Pena observed the requisite indicia of criminal activity for each of these levels of encounters.

By the time he took and retained Appellant's driver's license, Officer Pena had honked at Appellant five times, tapped on the window multiple times, and even shaken her multiple times without any response from her. Appellant was parked in a drive-through lane with the engine running.

Appellant argues that these facts are comparable to those in *State v. Griffey*, 241 S.W.3d 700 (Tex. App.—Austin 2007, pet. ref'd). In *Griffey*, the police received a call from a fast-food restaurant manager that someone was passed out in the drive-through lane. *Id.* at 702. When the officer arrived, an employee identified Griffey's car. *Id.* At that time, Griffey was awake and retrieving her food order. *Id.* The officer parked his patrol car in front of Griffey's car, effectively blocking her car. *Id.* After he had Griffey turn off the car and exit the vehicle, the officer noticed the odor of alcohol. *Id.*

The Austin Court of Appeals held that the officer lacked reasonable suspicion based on the legal principle that "[a] tip by an unnamed informant of undisclosed reliability may justify the initiation of an investigation; standing alone, however, it rarely will establish the requisite level of reasonable suspicion." *Id.* at 704. While the officer had received information from an informant that the officer had not previously known, the information was not corroborated by the officer upon arrival. *Id.* at 705. Accordingly, the officer lacked reasonable suspicion. *Id.* at 707.

Appellant points out that the Austin Court of Appeals also held that reports "that an individual was passed out behind the wheel in the drive-through line . . . does not constitute criminal behavior." *Id.* at 705. This holding has been called into question by the Court of Criminal Appeals, however.

In *York*, an officer passed a closed gas station but saw a car parked partially on the sidewalk in front of the store. *York v. State*, 342 S.W.3d 528, 531 (Tex. Crim. App. 2011). York was asleep in the driver's seat with the lights on and the engine running. *Id.* The officer did not smell any alcohol or see any evidence of a burglary from the store. *Id.* Nevertheless, the Court of Criminal Appeals held that these facts supported reasonable suspicion, warranting an investigative detention based on the potential offense of public intoxication. *Id.* at 536–37. In its analysis, the Court of Criminal Appeals distinguished *Griffey* based on the fact that *Griffey*

9

involved corroboration of a citizen-informant tip. *Id.* at 537 n.31. It went on, however, to recognize authority from other jurisdictions holding that reasonable suspicion exists when an officer sees a person asleep in the driver's seat of a car with the engine running. *Id.* (citing *People v. Brown*, 217 P.3d 1252, 1256 (Colo. 2009); *State v. Keller*, 403 So.2d 693, 696 (La. 1981)). *Griffey*'s holding that sleeping in a car in a drive-through is no evidence of a crime, then, is of limited persuasive value. *See* 241 S.W.3d at 705.

As in *York*, we hold Officer Pena had reasonable suspicion of public intoxication to warrant conducting an investigative detention at the time that he took Appellant's driver's license. *See* 342 S.W.3d at 536–37. "A person commits an offense [of public intoxication] if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another." TEX. PENAL CODE ANN. § 49.02(a) (Vernon 2011). The drive-through lane of a fast-food restaurant is a public place. *See York*, 342 S.W.3d at 537 (holding parking lot and sidewalk around gas station is public place). Officer Pena found Appellant asleep in the driver's seat of a car with the engine running while in a drive-through of a fast-food restaurant at 1:00 in the morning. This is sufficient to create reasonable suspicion that Appellant was intoxicated. *See id.* (holding evidence of defendant asleep in car at 3:00 A.M. with engine running, car parked partially on sidewalk, and headlights on created reasonable suspicion of

intoxication). Finally, Appellant's condition could have posed a risk to herself. *See id.* (holding, with engine running, intoxicated driver could, in stupor, drive into building or pose threat on road).

Appellant emphasizes the fact that, when he first approached her the first time, Officer Pena did not smell any alcohol. That was true in *York* as well. "Although Officer Johnson did not smell alcohol as he approached the car, that fact did not cause reasonable suspicion to dissipate, in part because [the defendant] could still have been intoxicated by drugs." *Id.*

In her motion for rehearing, Appellant claims that Officer Pena "made it clear in his testimony that he had not observed any signs of intoxication." Appellant claims that this is proved by the fact that Officer Pena ordered her to drive 500 feet. Even if Officer Pena personally believed at the time that Appellant was not intoxicated, this is not relevant to a determination of reasonable suspicion. "This standard is an objective one that disregards the actual subjective intent or motive of the detaining officer and looks, instead, to whether there was an objective justification for the detention." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). The fact that Officer Pena ordered Appellant to drive 500 feet does not disprove that he found her asleep in a fast-food-restaurant drive-through lane at 1:00 in the morning or that honking, knocking on her window, and initial physical contact did not wake her. Accordingly, it was within the trial court's

11

discretion to deny the motion to suppress based on reasonable suspicion. *See Turrubiate*, 399 S.W.3d at 150 (holding appellate courts review trial court's factual findings for abuse of discretion).

By the time he handcuffed Appellant, Officer Pena had noticed the smell of alcohol, Appellant had become agitated and began cussing at him, and Appellant had difficulty standing, falling to the ground more than once. We hold these facts, coupled with the facts that it was 1:00 A.M. and that Appellant had fallen into a deep sleep in a brief amount of time, was in a location requiring her attention, and left the car running, are sufficient to create probable cause for public intoxication. *See Gutierrez v. State*, 419 S.W.3d 547, 551 (Tex. App.—San Antonio 2013, no pet.) (holding argumentative behavior, slurred speech, dazed appearance, and glassy, bloodshot eyes sufficient to support probable cause for public intoxication); *Campbell v. State*, 325 S.W.3d 223, 232 (Tex. App.—Fort Worth 2010, no pet.) (holding sleeping in car, smelling of alcohol, slurring words, and reaching for keys already in ignition support probable cause for public intoxication).

We hold the trial court could have determined within its discretion that Officer Pena had reasonable suspicion to conduct an investigative detention and then had probable cause to arrest Appellant. Accordingly, we overrule Appellant's second and fourth issues. Because these rulings are dispositive to affirming the

trial court's ruling on Appellant's motion to suppress, we do not need to reach Appellant's first and third issues. *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).