461 So.2d 1099 (1984)
STATE of Louisiana
v.
Manuel DIAZ and Pedro Diaz.
No. 84-KA-71.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1984.
*1101 William C. Credo, III, Asst. Dist. Atty., Research & Appeals, Gretna, for State of La., plaintiff-appellee.
John H. Craft, Staff Appeals Counsel, 24th Judicial Dist., Indigent Defender Bd., Gretna, for Manuel Diaz and Pedro Diaz, defendants-appellants.
Before BOUTALL, KLIEBERT and CURRAULT, JJ.
BOUTALL, Judge.
Manuel and Pedro Diaz ("The Diazes"), appellants, were each charged by bill of information with violating R.S. 40:966(E), possession of marijuana in excess of 100 pounds. After a two day trial, the jury returned a verdict of guilty as charged as to both defendants. Following the denial of defendants' motion for new trial, each defendant was sentenced to 10 years at hard labor and ordered to pay a fine of $50,000.00. This appeal followed.
The Diazes assign the following errors for our review:
1. The court erred in denying appellants' motion to suppress evidence.
2. The court erred in ruling that counsel for Manuel Diaz lacked standing to cross-examine prosecution witnesses concerning the seizure from Pedro Diaz.
3. The trial court erred in failing to charge the jury that it could return a verdict of guilty of possession of less than 100 pounds of marijuana.
8. The court erred in imposing an excessive sentence and in failing to comply with the sentencing guidelines stated in C.Cr.P. art. 894.1.

*1102 9. The court erred in denying defendants' motion for a severance.
Appellants have raised other assignments of error but have neither briefed them nor argued them. We find several errors in this case and we set aside the convictions and the sentences. We have considered all of the above because they are pertinent to whatever proceedings may later ensue.

FACTS
On the morning of March 3, 1982, George Frisch, an off-duty traffic sergeant with the Jefferson Parish Sheriff's Office, was waxing his car in the driveway of his home at the corner of Morningside and Guardian Avenue in Gretna, when he noticed a blue Oldsmobile pass slowly down the side street and park next to a vacant lot about 50 feet from where he was standing. As Frisch watched, he saw two Hispanic males get out of the car, go to the trunk, partially open it, and examine its contents. From his viewpoint, Frisch could see three large burlap-covered bales. Because of Frisch's prior experience on the vice squad, which worked closely with narcotics agents, he knew that marijuana was frequently packaged in burlap sacks such as the ones he observed in the trunk of the Oldsmobile. Frisch then ran inside to get his identification and gun, intending to arrest the two men. When he emerged, he saw the two occupants of the car walking down the street away from him.
At the same time, two officers drove by on routine patrol. Frisch stopped them, told them what he had observed, and ordered them to run a registration check on the Oldsmobile, which bore an out-of-town license plate. They ran a registration check and while examining the car, noticed two hand guns on the front seat. Shortly thereafter, Pedro reappeared. He walked up to the three officers standing around his car, and one of them started asking Pedro about the two hand guns. During this time, the other officer noticed a brown substance on the rear bumper of the car, which looked like marijuana.
The officers then asked Pedro Diaz if he had the keys to the trunk. According to the officers, Pedro answered yes and handed them over. At trial, Pedro testified to the contrary: that the keys were taken from him without his consent. In any event, the trunk was opened, the marijuana was seized, and Pedro was arrested.
As the officers waited for backup units to arrive on the scene, another car drove by with Manuel in it. Frisch recognized Manuel and ordered the car stopped. After a short chase down Morningside, the car was stopped and Manuel was arrested.

ASSIGNMENTS OF ERROR 1 & 2
The first two assignments of error relate to the defendants' Motion to Suppress Evidence. Appellants contend that they were wrongfully detained and that the automobile was illegally searched and that the marijuana found therein was illegally seized.
We find that the detention of Pedro Diaz was not a custodial arrest so as to require probable cause, but rather an investigatory stop which need only be based on a reasonable suspicion that an offense has been or is about to be committed. State v. Davis, 407 So.2d 666 (La.1981). The criteria for an investigatory stop is codified in Louisiana Code of Criminal Procedure article 215.1 which provides in pertinent part that a "law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." In applying this criterion, Louisiana courts have adopted a "totality of the circumstances" approach to determine when a person has been arrested. State v. Brown, 445 So.2d 456 (La.App. 5th Cir. 1984).
Immediately prior to the investigatory detention the following facts were known to the officers:
1. A car bearing out-of-town license plates had been driven into a residential neighborhood and parked on the roadside next to a fenced vacant lot;

*1103 2. The two Hispanic occupants exited the car and after furtively glancing around the area opened the trunk of their vehicle revealing to an off-duty police officer three large burlap-covered bundles;
3. Because of the police officer's experience with the narcotics office of the Jefferson Parish Sheriff's Office, he noted the bundles appeared to be consistent in configuration and wrapping materials with bales of marijuana as they are shipped for transport;
4. After leaving the car, the subjects left the area and to the best of the officer's knowledge did not enter or approach a residence in the immediate area;
5. That the police officers at the site saw two hand guns on the front seat of the vehicle.
We are of the opinion that these facts justify the investigatory detention of Pedro Diaz when he returned to the vehicle. Inherent in the officer's right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or available to the officers or to obtain information independently from his cooperation. State v. Fauria, 393 So.2d 688 (La.1981).
After the police officers talked to Diaz they received from him his consent to search the vehicle and he gave them the keys to it. Although Diaz disputes this voluntary surrender of the keys and his consent, the trial judge found that he did give consent to search the vehicle. The officers testified that consent was voluntarily given and based upon an assessment of their credibility by the trial judge, there is sufficient basis for that conclusion.
Additionally, we are of the opinion that the factual situation then presented to the officers justified an immediate search of the automobile without obtaining a search warrant. In addition to the list of facts stated above, there should also be considered the fact that when the police officers were talking to Pedro Diaz, they discovered on the rear bumper area of the vehicle vegetable matter which their experience told them was marijuana. At this time there was uncertainty as to whether any accomplices might be lurking about because both of the car's occupants had gone off to unknown destinations, and indeed while the officers were having a search made into the ownership of the vehicle and the registration of the guns found, Manuel Diaz passed the scene in a vehicle with another male, and was later run down and apprehended. The car was parked on a public street and was accessible to anyone who might have reason to move the vehicle or remove the evidence from within. See State v. Redfearn, 441 So.2d 200 (La. 1983). It is clear that the justification to conduct a warrantless search of this nature does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant. Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982). See also Florida v. Meyers, ___ U.S. ___, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984). Clearly the record provided sufficient articulable facts to support a finding of probable cause to believe that the burlap-covered bundles in the trunk contained marijuana.
The next error urged on the Motion to Suppress is the trial court's ruling that counsel for Manuel Diaz lacked standing to cross-examine prosecution witnesses concerning the seizure of evidence from Pedro Diaz.
L.S.A.Const. Art. 1 Section 5 (1974) states in part: "Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court." This article is broad and accords standing to virtually anyone against whom evidence is seized. Thus, counsel for Manuel Diaz had standing to *1104 contest the validity of the search and seizure of the evidence from Pedro Diaz, and the trial judge was in error by limiting cross-examination.
However, La.C.Cr.P. art. 921 provides that "a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect the substantial rights of the accused." In its interpretation of the article, the Louisiana Supreme Court in State v. Gibson, 391 So.2d 421 (La.1980) adopted the "harmless error" test formulated by the U.S. Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The test requires the reviewing court to focus on the erroneously admitted evidence or other constitutional error and ask whether there is a reasonable possibility it might have contributed to the conviction. In response, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt.
The error in the present case occurred in a pretrial suppression hearing. At the time of the hearing, as well as at trial, Manuel and Pedro Diaz were unsevered co-defendants. The Motion to Suppress was filed on behalf of both parties and tried as a single proceeding. The issue of the legality and subsequent seizure was fully presented to the trial court. It appears that the trial judge permitted full cross-examination by Pedro's attorney, but only partial cross-examination by Manuel's attorney, comparing them to co-counsel for a single defendant. It appears that crossexamination was thorough and searching, and nothing is suggested to us that was not covered by one or the other or both cooperating defendants whose joint interest was to have the evidence suppressed. We cannot conclude that the limitation imposed on one attorney would have materially affected the introduction of the evidence or would have affected the outcome of either the Motion to Suppress, or ultimately the trial. The issue presented was decided similarly in State v. Boyd, 359 So.2d 931, 949 (La.1978).
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 9
Manuel Diaz assigns as error the trial court's denial of his Motion for Severance. La.C.Cr.P. art. 704 provides:
"Jointly indicted defendants shall be tried jointly unless: (1) The state elects to try them separately; or (2) the court, on motion of the defendants, and after contradictory hearing with the District Attorney, is satisfied that justice requires a severance."
The defendant bears the burden of proof in such a motion; allegations are not enough. State v. Williams, 416 So.2d 914 (La.1982). The allegations are that Manuel knew nothing of the marijuana and was never in possession of it; that the testimony of Pedro would show this to be true. Each case must stand on its own facts. The defendants must show that a joint trial would be prejudicial.
This Manuel Diaz failed to do. The defenses are not antagonistic. The only antagonistic defense Manuel could have presented was to blame everything on his brother Pedro, but under Manuel's theory Pedro would not blame him. Instead he would exculpate him. Not only is there no showing that Pedro would not testify at a joint trial, but in fact both testified on trial and both testified that Manuel knew nothing of the marijuana.
We feel the trial court's denial of the Motion for Severance was well within its sound discretion. Thus, finding no abuse of that discretion, we find no ground for reversal. Assignment No. 9 lacks merit.

ASSIGNMENT OF ERROR # 7
Appellant contends that the trial court erred in failing to charge the jury that it could return a verdict of guilty of possession of less than 100 pounds of marijuana and failed to include that crime as a responsive verdict. We conclude that the court did err because it refused to accord the defendants their statutory right to have *1105 the court instruct the jury as to the law applicable to responsive verdicts.
Procedurally, this matter came about as follows. The District Attorney first charged the Diazes with having on March 3, 1982 "violated R.S. 40:966 in that they did knowingly and intentionally possess a controlled dangerous substance, to-wit: 200 pounds of Marijana." After a bill of particulars was filed, the information was amended on January 26, 1983 to read after "to-wit:" "40:966(E) in excess of 100 pounds of marijuana."[1] Over objection of counsel, the court refused to charge the jury as to possession of marijuana less than 100 pounds and he gave the following responsive verdicts to the jury: 1) Guilty of possession of a controlled dangerous substance, to-wit: marijuana in excess of 100 pounds. 2) Guilty of attempted possession of a controlled dangerous substance, to-wit: marijuana in excess of 100 pounds. 3) Not guilty.
Thus it would appear that the trial judge attempted to fit the responsive verdicts to the list and format provided in Code of Criminal Procedure article 814(A)(50)[2] by simply adding to the appropriate verdict the extra element of possession in excess of 100 pounds. In so doing, the judge although stating that article 814(A)(50) was the applicable statutory authority, deviated from the element requirements of that article. Subsection A applies only "where the indictment charges the following offenses." The crime of possession of marijuana statutorily differs from the possession of other Controlled Dangerous Substances. It should be further noted that this subsection was added by Act 336 of 1975 "to provide for specific responsive verdicts in certain cases arising under the Uniform *1106 Controlled Dangerous Substances Law." Correspondingly, for other cases Section B of that article specifically provides "Except as provided in Sub-article A, responsive verdicts in any cases arising under the Uniform Controlled Dangerous Substances Law shall be governed by Article 815 of the Code of Criminal Procedure."
Article 814 sets out specifically lists of responsive verdicts for nearly all of the more common crimes in Louisiana. The following article 815 is designed to provide the criteria for determining responsive verdicts for those crimes not specifically listed.[3] Additionally, C.Cr.P. art. 803 requires the court to charge the jury as to the law applicable to each offense of which the accused could be found guilty under the provisions of either article 814 or 815.
In this case the original bill of information simply contained a charge under the general provisions of LRS 40:966 for possessing a controlled dangerous substance and was then amended to make the charge specifically under subsection E thereof, which provides the violation of possession of 100 pounds or more but less than 2000 pounds of marijuana. By reference to those sections of the controlled dangerous substances law which referred to marijuana, and particularly LRS 40:966, it is seen that subsections A and B relate to the crime of manufacturing and distribution and the punishment thereof. Subsection C relates to possession of schedule 1 narcotics drugs, including marijuana, and subsections D, E and F relate specifically to possession of marijuana. Subsection D provides the punishment for possession of marijuana in violation of subsection C without regard to the amount possessed and provides for a fine of not more than $500.00, imprisonment in the Parish jail for not more than six months, or both. The rest of that subsection provides for multiple offenses. Subsection E(1) specifically describes the crime of possession of 100 pounds or more but less than 2000 pounds, (2) possession of 2000 pounds but less than 10,000 pounds, and (3) of 10,000 pounds or more, fixing a more severe sentence in each case. When considering this statutory scheme, it becomes apparent that the legislature has intended that for possession of marijuana, the severity of the punishment is regulated by the introduction of another element of the crime, i.e., the amount of marijuana possessed. Because of this added element of the crime, C.Cr.P. art. 814, which provides "the only responsive verdicts which may be rendered when the indictment charges the following offenses are: * * * 50. Possession of controlled dangerous substances" does not fit the statutory scheme for possession of marijuana in a certain amount. Hence, the necessity of subsection B thereof which provides that art. 815 be used.
The responsive verdicts by the judge given sufficiently charge as to the crime of possession of marijuana of 100 pounds or more. However, the precise issue is should the judge also have charged as to possession of less than that amount, subsection D. This involves a determination of whether possession of less than that amount is a lesser and included grade of the offense charged.
We feel that the issue here is controlled by the principles announced in the case of State v. Dufore, 424 So.2d 256 (La.1982). As stated in that case at page 258:
"Lesser and included offenses are those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged. State v. Cooley, 260 La. 768, 257 So.2d 400 (1972). Thus, evidence which supports a conviction of the charged offense necessarily supports a conviction of a lesser and included offense. Accordingly, when the accused requests an instruction *1107 to the jury on the law applicable to an offense which is truly a lesser and included grade of the charged offense, the trial court has no discretion to refuse to give the requested instruction."
Applying those principles to this case, it is readily seen that the elements of each crime are identical, except for the difference in the amount of the marijuana possessed. To put it another way, evidence which supports a finding of guilty of possession of 100 pounds or more obviously proves possession of 99 pounds or less.[4] It follows then that the requested charge was mandatory under article 815(2), and that the mandate of article 803 requiring the trial court to charge the jury as to any offense of which the accused could be found guilty was violated.
Accordingly, we must set aside the conviction and remand this matter for further proceedings.
Although this assignment of error is dispositive of both the conviction and the sentence, nevertheless, we feel compelled to point out that the sentence imposed in this case contained a term of imprisonment at hard labor and imposed a fine of $50,000.00 in addition on each defendant. The penalty provision of R.S. 4:966(E)(1) in effect at the time that the offense occurred, March 3, 1982, did not provide for a maximum amount of fine to be imposed. In State v. LeCompte, 406 So.2d 1300, 1304 (La.1981), the court declared that portion of the penal provision relating to fines unconstitutional.
Accordingly, for the reasons expressed above, the conviction and sentence are set aside and this case is remanded to the trial court for further proceedings consistent with the views expressed herein.
CONVICTION AND SENTENCE SET ASIDE, CASE REMANDED.
NOTES
[1] Section 966. Penalty for distribution or possession with intent to distribute narcotic drugs listed in Schedule I; Possession of marijuana.

* * * * * *
D. Possession of marijuana. (1) Except as provided in Subsections E and F hereof, on a first conviction for violation of Subsection C of this Section with regard to marijuana, tetrahydrocannabinol or chemical derivatives thereof the offender shall be fined not more than five hundred dollars, imprisoned in the parish jail for not more than six months, or both.
(2) Except as provided in Subsections E and F hereof, on a second conviction for violation of Subsection C of this Section with regard to marijuana, tetrahydrocannabinol or chemical derivatives thereof the offender shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than five years, or both.
(3) Except as provided in Subsections E and F hereof, on a third or subsequent conviction for violation of Subsection C of this Section with regard to marijuana, tetrahydrocannabinol or chemical derivatives thereof the offender shall be sentenced to imprisonment with or without hard labor for not more than twenty years.
E. (1) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses one hundred pounds or more, but less than two thousand pounds, of marijuana, tetrahydrocannabinol or chemical deratives (sic) thereof, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than ten years, and to pay a fine of not less than twenty-five thousand dollars.
(2) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses two thousand pounds or more, but less than ten thousand pounds, of marijuana, tetrahydrocannabinol or chemical derivatives thereof, shall be sentenced to serve a term of imprisonment at hard labor of not less than ten years, nor more than fifteen years, and to pay a fine of not less than fifty thousand dollars.
(3) Except as otherwise authorized in this Part, any person who knowingly or intentionally possesses ten thousand pounds or more of marijuana, tetrahydrocannabinol or chemical derivatives thereof, shall be sentenced to serve a term of imprisonment at hard labor of not less than fifteen years, nor more than twenty years, and to pay a fine of not less than two hundred thousand dollars.
As provided by Act 800 of 1981, eff. Aug. 2, 1981.
[2] Art. 814. Responsive verdicts; in particular

A. The only responsive verdicts which may be rendered when the indictment charges the following offenses are:
* * * * * *
50. Possession of Controlled Dangerous Substances:
Guilty.
Guilty of attempted possession of controlled dangerous substances.
Not guilty.
* * * * * *
B. Except as provided in Subarticle A, responsive verdicts in any other cases arising under the Uniform Controlled Dangerous Substances Law shall be governed by Article 815 of the Code of Criminal Procedure.
[3] C.Cr.P. art. 815 reads as follows:

"Art. 815. Responsive verdicts; in general In all cases not provided for in Article 814, the following verdicts are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
(3) Not Guilty."
[4] The marijuana was in 3 bales of a total weight as originally charged in excess of 200 pounds. The two experts testified that when the marijuana was weighed, it amounted to 114 and 109¼ pounds respectively. The narcotics office report showed a weight of 107 pounds. Because the scales were not calibrated, and because the marijuana was mixed with debris and contained stalks and seeds not classified as a controlled substance, it is apparent the amount possessed is dependent upon the credibility of the witnesses and the efficiency of the separation and weighing. This is obviously a jury question.