506 So.2d 1274 (1987)
STATE of Louisiana, Appellee,
v.
Robert Don HARRIS aka Bo Harris, Appellant.
No. 18512-KA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
Rehearing Denied June 4, 1987.
*1276 Davenport, Files & Kelly by Thomas W. Davenport, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Dist. Atty., Joseph T. Mickel, Asst. Dist. Attys., Monroe, for appellee.
Before SEXTON, NORRIS and LINDSAY, JJ.
PER CURIAM.
The defendant, Robert "Bo" Harris, age 30, was originally charged with two counts of possession of CDS, namely cocaine and phentermine, [LSA-R.S. 40:967(C)(2)] and possession of marijuana with intent to distribute, [LSA-R.S. 40:966(A)(1)]. Harris filed a motion to suppress physical evidence, contending that the drugs were seized in violation of his Fourth and Fourteenth Amendment rights against unreasonable searches and seizures. After a hearing, the district court denied defendant's motion to suppress and Harris pled guilty to conspiracy to possess marijuana with intent to distribute.[1] He was sentenced to three years imprisonment at hard labor and a fine of $1,000 and costs, with a default time of six months. Defendant now appeals from the denial of his motion to suppress, and also appeals from the sentence, which he contends is excessive.

FACTS
On August 19, 1985 Sergeant Larry Martin received a call through the Crime Stoppers Program informing him that defendant was supposed to be bringing back a quantity of marijuana in a Bancroft Bag truck. The anonymous informant said that Harris was employed as a truck driver for Bancroft Bag, had gone to Houston, and was supposed to be returning to Ouachita Parish on the 19th. That same day Detective James Keys spoke with Jeris Baker of Bancroft Bag and verified that Bo Harris was employed by them as a truck driver, that he was on a trip to Houston, and that he was expected to return on the 19th. Baker confirmed that Harris was assigned to go on routes throughout the country. No further action was taken on that date. On August 20 Crime Stoppers received another call from the informant saying that Harris did not return on the 19th as he was scheduled, but he was coming in on the 20th and would be carrying a quantity of marijuana. Detective Keys again contacted Jeris Baker and was told that Harris did not come in on the 19th as scheduled, but was expected to arrive on the evening of the 20th.
T.O. "Toby" Bancroft was contacted by phone, and agreed to sign a consent to search allowing the officers to search the Bancroft Bag truck which Harris was driving. At approximately 4:30 p.m. on August 20, police units were assigned to 1-20 to await Harris's arrival. Those officers were under instructions to stop the truck and detain it on the side of the road until the officers who were going to obtain the consent to search form signed by Bancroft could arrive. Detectives Martin and Keys then went to Bancroft's office, and he signed a consent to search form at approximately 5:00 p.m. After they returned to their vehicle, the two detectives heard on their radio that Harris had been pulled over. They went directly to the location of the stop. Harris was already out of the truck, but the other officers had not attempted to search the truck. After arriving at the scene, Keys informed Harris of his Miranda rights and informed him of the consent form signed by Bancroft. Harris was not threatened, coerced, nor promised anything. Harris consented to a search of the truck, and admitted to the officers that there were five to six pounds of marijuana in a box in the sleeper part of the truck. The officers then proceeded to search the truck. They found a large cardboard box containing five to six pounds of marijuana, and a blue money bag containing three syringes, a small baggie of cocaine, and some capsules of phentermine.
Harris subsequently aided the officers in investigating other drug traffickers, and his charges were reduced in a plea bargain *1277 to conspiracy to possess marijuana with intent to distribute.

MOTION TO SUPPRESS
The defendant's claim that the warrantless search was illegal is based on two theories: first, that the consent of Bancroft was not valid because he did not have the authority to authorize a search of the truck which was presumably under the control of Bancroft Bag; second, that there were no reasonable grounds to stop Harris, and Harris's consent to search was invalid because of the taint of this prior illegality.
The genuine issue is Harris's consent. We assume, without holding, that Bancroft had no authority to consent to a warrantless search of Harris's closed personal effects in the sleeper compartment of the cab.[2] However, if Harris's own consent to search was lawful and valid, then the search was permissible under an acknowledged exception to the warrant requirement. State v. Raheem, 464 So.2d 293 (La.1983). We therefore turn to the matters that bear on the validity of Harris's consent.
We must first determine whether the initial stop was justified under the circumstances of this case. The right of law enforcement officers to stop and interrogate one who is reasonably suspected of criminal conduct is recognized in LSA-C. Cr.P. art. 215.1. State v. Ossey, 446 So.2d 280 (La.1984), U.S. cert. denied 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). Reasonable cause for an investigatory detention is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. State v. Jernigan, 377 So.2d 1222 (La.1979), U.S. cert. denied 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980). The initial stop was based on two telephone calls from an anonymous informant telling the police of Harris's activities. The Louisiana Supreme Court has held that an anonymous tip can provide the basis for an investigatory stop when the information received carries sufficient indicia of reliability, such as specificity of the information and corroboration by independent police work. State v. Jernigan, supra; State v. Bolden, 380 So.2d 40 (La.1980) U.S. cert. denied 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70 (1980). Here, the information given by the informant was fully corroborated by the police to the extent possible. Harris's employment, route, initial schedule, and even his unexpected change in plans were all predicted by the informant and corroborated by the police. The confidential informant had sufficient knowledge of Harris's plans and activities to know when Harris did not return as expected, and was able to predict the date and approximate time at which he did arrive. The two telephone tips coupled with the police corroboration gave the officers sufficient knowledge of facts to justify stopping Harris for questioning.
It is the circumstances of the case that determine the nature of the temporary detention. State v. Winesberry, 256 La. 523, 237 So.2d 364 (1970). The record in no way suggests that the investigatory stop in any way progressed beyond permissible grounds. Inherent in the officers' right to stop a suspect and demand his name, address and an explanation for his actions is the right to detain him temporarily to verify the information given or to obtain information independently of his cooperation. State v. Fauria, 393 So.2d 688 (La.1981). Here, the officers who stopped Harris detained him for less than half an hour, a not unreasonable time, in order to allow the investigating officers to arrive, a situation very similar to that in Fauria. The officers knew at the time of the stop that the investigating officers were procuring a consent *1278 to search, and would immediately proceed to the scene of the stop upon being notified of the location. In light of all the circumstances, we must agree with the trial judge that the investigatory stop and temporary detention was in no way unreasonable.
The record reveals that Harris, having been questioned, voluntarily admitted there was considerable marijuana in the truck and consented to a search of the truck immediately after Detectives Keys and Martin arrived and advised him of his rights. We have already determined that Harris was not illegally detained at the time that he made his inculpatory statement and consented to the search. We conclude that Harris's consent was valid, and extended to his belongings in the cab of the truck. A consent to search is an exception to the warrant requirement, and a search executed pursuant to consent is valid. State v. Raheem, supra.
Moreover, once Harris admitted there were illegal drugs in the truck, the officers had probable cause to believe that contraband was located in the truck. In U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572, the United States Supreme Court held that police officers who have legitimately stopped a vehicle and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle as extensive as one that a magistrate could authorize. The scope of the warrantless search of a vehicle is not determined by the nature of the container in which the contraband is secreted, but rather is defined by the object of the search and the places in which there is probable cause to believe it may be found. U.S. v. Ross, supra; State v. Tatum, 466 So.2d 29 (La.1985).
The trial court did not err in denying the defendant's motion to suppress. There was no violation of the defendant's rights in a search pursuant to his validly given consent and under the automobile exception to the warrant requirement. This assignment does not present reversible error.

EXCESSIVE SENTENCE
In his second assignment of error defendant contends that the sentence imposed was excessive. On the charge to which he pled, Harris was exposed to a maximum penalty of five years and $7,500. The trial judge sentenced him to three years at hard labor and a fine of $1,000 plus costs, in default thereof six months in jail. No contention is made that the judge did not comply with the 894.1 guidelines, and we need only consider whether the judge abused his sentencing discretion. State v. Trahan, 412 So.2d 1294 (La.1982).
The sentencing judge engaged in an exhaustive colloquy with the defendant at the sentencing hearing and made a thorough analysis of the 894.1 factors as they applied to this particular defendant. Harris, age 31 at the time of sentencing, has a wife, a son, and a stepdaughter all living with him. He has been steadily employed, and his employer, family, and friends all gave excellent reports of him. This was defendant's first felony conviction. At the time of the search, Harris was in possession of over five pounds of marijuana, which he admittedly intended to sell at a profit of $100 per pound. He also had 3.5 grams of cocaine for his personal use, and a bottle of phentermine. He had been involved with drug traffic for a number of months, regularly obtaining and selling marijuana. The trial judge strongly believed that there was an undue risk that if Harris was placed on probation or given a suspended sentence he would commit another, similar crime, and that Harris was in need of a custodial environment and correctional treatment.
A first offender is not automatically entitled to suspension or probation. The sentencing judge is given wide discretion to determine if probation is in the public's and the defendant's best interest. LSA-C.Cr.P. 893; State v. McKethan, 459 So.2d 72 (La. App. 2d Cir.1984). A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of an abuse of his discretion. State v. Forshee, 395 So.2d 742 (La.1981).
*1279 Harris received substantial benefit from his plea bargain. The possession with intent to distribute of marijuana was reduced to a conspiracy charge, and the prosecutors also agreed to drop any charges for the other controlled dangerous substances with which he was found. His total exposure of 20 years and $25,000 was reduced to 5 years and $7,500. The charge to which Harris pled did not accurately reflect his actual criminal conduct. When this is the case, the sentencing judge has greater discretion to impose a maximum sentence or a sentence near the maximum. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Richardson, 446 So.2d 820 (La. App. 2d Cir.1984). In light of the benefit which he received from the plea bargain, and the aggravating circumstances as found by the sentencing judge, we cannot say that a sentence of three years at hard labor and a fine of $1,000 plus costs is grossly out of proportion with the severity of the crime. State v. Washington, 414 So.2d 313 (La.1982). This assignment does not present reversible error.
For the reasons expressed, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant's plea of guilty did not waive the right to an appeal from the denial of the motion to suppress below. State v. Crosby, 338 So.2d 584 (La.1976).
[2] A defendant may object to a search consented to by another where the defendant has exclusive control over a part of the premises searched or an "effect" on the premises which is itself capable of being (and is) "searched." "Enclosed spaces" over which a non-consenting party has a right to exclude others, whether rooms or effects, are protected. United States v. Poole, 307 F.Supp. 1185 (E.D.La.1969).