617 So.2d 1 (1992)
STATE of Louisiana
v.
Kevin CHIRLOW and Joseph Parks.
No. 92-KA-570.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1992.
Rehearing Granted January 20, 1993.
Order Reinstating Original Opinion On Rehearing March 30, 1993.
Writ Denied July 1, 1993.
*2 A. Bruce Netterville, Gretna, for appellants/ defendants Kevin Chirlow and Joseph Parks.
John Mamoulides, Dist. Atty., Terry M. Boudreaux, Asst. Dist. Atty., Research and Appeals, Howat Peters, Asst. Dist. Atty., Louise Korns, of counsel, Gretna, for appellee State.
Before BOWES, GAUDIN and CANNELLA, JJ.
CANNELLA, Judge.
Defendants, Kevin Chirlow and Joseph Parks, filed a Motion To Suppress The Evidence, Confession And Identification and it was denied by the district court. The defendants thereafter pled guilty, under State v. Crosby, 338 So.2d 584 (La.1976), to possession of cocaine, and were sentenced. We reverse the denial of the motion to suppress, vacate the convictions and sentences and remand.
On September 12, 1991, defendants were charged by bill of information with possession of cocaine, in violation of La.R.S. La. 40:967(C). On January 27, 1992 defendants filed a Motion To Suppress The Evidence Confession and Identification, arguing that it was obtained unconstitutionally. At the hearing on the motion to suppress, both the state and defendants agreed to submit the matter on the police report alone. That report provides:
Officers were contacted by a confidential informer, stating that a subject by the name of Kevin Chirlow and a unknown black male were in a older model Pontiac Firebird, grey in color, and they were in the Mary Poppins area selling cocaine.
Officers and other members of the street crimes unit responded to the area immediately. Officer Dykes and Bealer upon turning left unto North Mary Poppins off of Mary Poppins observed an older model Firebird, grey in color, attempting to turn onto West Mary Poppins from North Mary Poppins. Officer Dykes and Officer Bealer assisted by Officers Williams and Mourier stopped suspect vehicle. Officers at this time *3 had the driver and passenger exit vehicle. Officers Williams & Mourier then performed a routine pat down of both subjects for possible weapons for the safety of Officers. Officers Dykes & Bealer then checked the immediate area of vehicle where driver & passenger were located, for possible weapons for the safety of officers.
Other members of the street crimes unit then arrived on the scene & the driver & passenger was secured. It was then learned that the driver of suspect vehicle was a Kevin Chirlow & the passenger was a Joseph Parks. Officer LeConte & other officers advised Mr. Chirlow that we had information that he had narcotics in his vehicle. Officers observed Mr. Chirlow & Mr. Parks acting very nervous. Officer LeConte then advised Mr. Chirlow & Mr. Parks of their rights per Miranda and advised them they were under investigation for possible possession of cocaine. Officer LeConte then asked Mr. Chirlow if he would give consent to search his vehicle. Mr. Chirlow then verbally stated "yes, go ahead & search the car, I have nothing to hide." Officer LeConte then filled out consent to search form & read the form to Mr. Chirlow advising of his rights per Miranda again, at which time Mr. Chirlow refused to sign the consent to search form for suspect vehicle. Officers on location observed a large crowd gathering around the area. It should be noted that the area is known for its drugs dealings & violent crimes & that officers had been shot at on several different occasions. Due to the nervousness of Mr. Chirlow & Mr. Parks led officers to believe there was narcotics in suspect vehicle. Agent Scott Morse then arrived on the scene with Agent Adams & his K-9 dog Bear, used for finding narcotics. Agent Adams acting on the verbal consent of Mr. Chirlow and the volatile situation due the location, let Bear check suspect vehicle. K-9, Bear upon entering suspect vehicle had a positive reaction by scratching & pawing at the center console. Officer LeConte at this opened the center console door & removed the inner lining & discovered a clear plastic bag with a white powder in it. Officer LeConte then handed the clear bag with the white powder in it to Officer Dykes & in turn Officer Dykes gave it to Agent Morse who test the white powder, which proved positive for cocaine. The clear bag & with approximately 19 grams of cocaine was then turned over to agent Morse for evidence. Officers Dykes & Bealer then advised Mr. Chirlow & Mr. Parks they were under arrest, advised them of their rights per Miranda again. A search of the vehicle then revealed 1x Radio Shack ct 301 cellular phone, serial # 00748619 and a cellular charger model # ct 300/301, serial # 242762, which was also seized by Agent Morse because of possible use for narcotics transactions.
Also a search of Mr. Chirlow, incidental to arrest revealed in his possession a key to a apartment at the Roadway Inn in Gretna. Officer LeConte at this time asked Mr. Chirlow if he would sign a consent to search of the room he had rented. Mr. Chirlow at this time signed a consent to search the room at the Roadway Inn. (see consent to search from attached also the consent to search form for vehicle that Mr. Chirlow refused to sign after giving verbal consent).
Dep. James, J.P. 1295 & Dep. Harrison J.P. 1294 then transported S1 & S2 to J.P.C.C.
Dep. LeConte & Dep. Reed Caston then went to the Roadway Inn & searched the room, but nothing was discovered.
Officer Dykes & Bealer then went to J.P.C.C. & booked S1 & S2 accordingly.
Officer Williams stayed with suspect vehicle & released it to the sister of Mr. Chirlow.
No further info at this time.
(Emphasis added).
The trial court denied the motion to suppress. The defendants entered guilty pleas to the charged offense, under State v. Crosby, supra, reserving their right to appeal the denial of the motion to suppress. *4 The trial judge sentenced defendant, Chirlow, to one year in parish prison with credit for time served. He sentenced defendant, Parks, to one year in parish prison, suspended, with one year of active probation subject to conditions.
Defendants appeal seeking review of the trial court ruling denying the motion to suppress. Defendants argue that the officers did not have reasonable cause to justify the initial investigatory stop. Further, even if they did, the continued detention and "securing" of the defendants, after questioning them and searching their persons and their vehicle for weapons, elevated the initial stop to an arrest without probable cause. Thus, the property seized was illegally obtained. The state argues that the officers did have reasonable cause for the stop and that the evidence seized was legally seized with the consent of defendant.
In determining the validity of the seizure of the cocaine as a result of the search of defendant's automobile by the police dog, we must examine three separate but related events, the initial stop of the defendants, their continued detention and the subsequent search of the vehicle by the police dog trained in the detection of narcotics. If any of these actions is not legally justified, then the constitutional rights of defendants were violated and the evidence obtained is inadmissible.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibits unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). La.C.Cr.P. art. 215.1 provides in pertinent part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each case, by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The totality of the circumstances must be considered in determining whether reasonable cause exists. State v. Belton, supra. An informant's tip can provide a police officer with reasonable cause to detain and question a suspect. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Jernigan, 377 So.2d 1222 (La.1979); State v. Lee, 485 So.2d 555 (La.App. 5th Cir.1986). Even an anonymous tip can provide the basis of an investigatory stop, provided the tip carries enough indicia of reliability, such as specificity of information and corroboration by independent police work, to justify the stop. State v. Jernigan, supra.
When the constitutionality of a warrantless search is at issue at a hearing on a motion to suppress, the state bears the burden of affirmatively showing that it was justified under one of the exceptions to the warrant requirement. State v. Raheem, 464 So.2d 293 (La.1985). Here the state and defendants submitted the motion on the police report. Accordingly, we are restricted to that document in considering the question of whether the seizure was valid. Here, the reasonableness of the initial stop must be determined in light of the information that the officers received from a "confidential informer." While the person giving the information was referred to in the police report as a "confidential informer" the report does not specify whether this informant had ever given information in the past that had proven reliable. It did not indicate if the officers knew the individual. Nor did it indicate the reliability of the information. Nevertheless certain portions of the information were confirmed by police observation, that is, the *5 color, model and location of the vehicle. After the stop, other information was confirmed, two men in the car and one was named Kevin Chirlow. However, upon observing the vehicle, the report does not indicate that the officers observed any illegal activity or even any suspicious activity. Rather, they stopped the vehicle based on the tip and the officers' knowledge that this was an area known for drug dealings. Thus, considering the totality of the circumstances, it appears that the reasonableness of this initial stop has been proven by the State. See State v. Lee, supra.
An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, supra; State v. Foley, 570 So.2d 171 (La.App. 5th Cir.1990). The State must prove that the police had probable cause for an arrest. State v. Raheem, supra. An arrest without probable cause is illegal and the seizure of evidence pursuant thereto is also illegal. Here, the vehicle was stopped. The driver and passenger were requested to exit the vehicle. The defendants were personally searched by "a routine pat down of both subjects for possible weapons". Then the area of the vehicle where the driver and passenger were seated was searched "for possible weapons". There is no indication that the defendants were in any way uncooperative or suspicious except for being nervous (a legitimate emotion for innocent or guilty people under the circumstances). The report provides that at that point "the driver and passenger was [sic] secured." At this time there were at least three police units on the scene and at least six officers milling about. The officers advised defendant Chirlow that they had "information that he had narcotics in his vehicle." The officers then advised defendants of their Miranda rights and told them they were under investigation for possession of cocaine. Defendant Chirlow was asked to consent to a search of his vehicle. Another unit arrived with two more officers and a K-9 dog "Bear" used to detect narcotics. At this point we find that the circumstances indicate an intent to effect an extended restraint on the liberty of the defendants, far surpassing that of an investigatory stop, elevating the initial stop to an arrest. The only articulated facts connecting defendants with unlawful activity were their presence in a known drug dealing area, an informant's wholly conclusionary statement that the defendants were selling drugs and defendant's nervousness. We find that the arrest was made without probable cause, making it illegal, and thereby making the seizure of evidence also illegal.
The state argues that, even if the arrest was illegal, the evidence was nonetheless validly seized because it was obtained with the defendant's consent.
A search conducted pursuant to consent is one of the specifically established exceptions to the requirements of both a warrant and probable cause. When the state seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that the consent was given freely and voluntarily. When given after an illegal arrest, consent to search, even if voluntary, is valid only if it was the product of a free will and not the result of an exploitation of the previous illegality. Among the factors to consider in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. State v. Raheem, supra; State v. Owen, 453 So.2d 1202 (La.1984).
Here, Chirlow was subjected to an illegal arrest and it was during these events that his verbal consent was obtained to search his vehicle. He was read his Miranda rights and asked to consent to a search of his vehicle. He gave his verbal consent. He was then read the consent form, advising him that he had the constitutional right not to have the search made *6 without a warrant and his right to refuse to consent to the search. Following that Chirlow refused to sign the consent form. Thereafter, another police unit arrived with the K-9 dog, Bear, and the vehicle was searched with the assistance of the dog. After a positive reaction by the dog toward the console, the officer removed the inner lining of the console and discovered a plastic bag containing a white powder which tested positive for cocaine. There were no intervening circumstances between the illegal arrest and the consent. Under these circumstances, we find that the state has failed to meet its burden of proving that the consent was freely and voluntarily given, sufficiently attenuated from the illegal arrest and evidently a product of the defendant's free will.
Accordingly, we find that the defendant were legally stopped, that they were illegally arrested, that the evidence was illegally seized and that the district court erred in denying the motion to suppress. Therefore, defendants' guilty pleas and sentences are vacated and the case is remanded for further proceedings.
DENIAL OF MOTION TO SUPPRESS REVERSED; CONVICTIONS AND SENTENCES VACATED; REMANDED.
BOWES, J., DISSENTS and would affirm being of the opinion that the investigatory stop and subsequent arrest and seizure of the cocaine were legal and fully justified under the facts of this case.

PER CURIAM

ON REHEARING
The court granted a rehearing in this matter on January 20, 1993. After reargument and reconsideration we are of the view that our original opinion was correct and order it re-instated.
BOWES, Judge, dissenting.
I respectfully dissent, being of the opinion that the officers were justified in detaining the defendants after the initial stop and, therefore, defendant's consent to search his vehicle was lawful. State v. Mims, 330 So.2d 905 (La.1976); State v. Harris, 506 So.2d 1274 (La.App. 2 Cir. 1987) writ denied, 511 So.2d 1158 (La. 1987).
As held by my esteemed colleagues, the reasonableness of the initial stop was proven by the state. Because the officers had reasonable cause to conduct the initial investigatory stop, in my view they could lawfully detain the defendants.
I am of the opinion that inherent in the officer's right to stop a suspect and demand his name, address, and an explanation of his actions is the right to detain him temporarily to verify the information given or available to the officers or to obtain other information independently from his cooperation. State v. Fauria, 393 So.2d 688 (La.1981); State v. Diaz, 461 So.2d 1099 (La.App. 5 Cir.1984). An important factor in determining the reasonableness of an investigatory stop is whether the police diligently pursue their investigation. State v. Lee, 539 So.2d 753 (La.App. 3 Cir.1989), writ denied, 543 So.2d 17 (La.1989). Here, the officers diligently pursued their investigation of the tip immediately after receiving it. The tip was confirmed to a great extent when they observed an old model Firebird, grey in color, with two men inside, one of which was Kevin Chirlow, just as the informant had said. The informant was thus proven reliable before anything further happened. In addition, this stop occurred in a known high crime area, and the defendants began to act nervously when the officers told Chirlow that their information indicated that he had cocaine in his vehicle. This reaction has been recognized many times by the courts as a possible indication of guilt under similar facts and circumstances.
Furthermore, Chirlow, after initially consenting to a search of his vehicle, refused to sign a written consent form and both defendants continued to act nervously throughout the incident. However, the testimony did establish that Chirlow never withdrew his consent to search the car; he simply refused to sign a form which many people hesitate or refuse to do with any kind of transaction because of the finality of signing. But hesitation or refusal to *7 sign a document is NOT the equivalent of withdrawing consent previously given in an unqualified manner.
Thus, I believe that the temporary detention of the defendants, during which Chirlow consented to a search of his vehicle, was reasonable and that such consent was never withdrawn.
Accordingly, I respectfully dissent.