693 So.2d 2 (1997)
STATE of Louisiana
v.
Jesus DURAN.
No. 96-KA-602.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1997.
*3 Harry J. Morel, Jr., District Attorney, Louis G. Authement, Assistant District Attorney, Hahnville, for plaintiff-appellee.
Robert A. Chaisson, Destrehan, for defendant-appellant.
Before GAUDIN, DUFRESNE and DALEY, JJ.
GAUDIN, Judge.
Jesus Duran was convicted of possession of more than sixty (60) pounds of marijuana in St. Charles Parish. We affirm.
Duran was driving on the I-10 eastbound on November 16, 1994 when he was stopped by police officer Ricky Oubre for improper lane usage. Duran changed lanes directly in front of a tractor-trailer truck without signaling.
After explaining the reason for the traffic stop, Oubre questioned Duran about his destination. Duran said that he was from New Mexico and that he was "... coming down here to have a good time." When Oubre again inquired about Duran's destination, he (Duran) stated that he was going to New Orleans and that he would be staying there 10 to 15 days; however, Oubre observed that there was only one set of clothes hanging in the vehicle. Oubre asked the defendant where he would be staying that night and after hesitating "quite a bit," Duran said that he was "... just going to get a hotel room." Oubre testified that Duran appeared to be making up his responses and that he was nervous. Oubre became suspicious that Duran was hiding something. Duran had a New Mexico driver's license. His vehicle was only insured for a period of 30 days and that it was registered in Texas under the name of Martha Martinez. Oubre called for "back-up" policemen.
After two other officers arrived at the scene, Oubre issued Duran a warning citation for improper lane usage. Duran was asked if there was anything in his vehicle that would concern police officers, Duran said no and then said the officers could search the vehicle.
Two drug-detecting dogs were employed. This led to the discovery of 96.74 pounds of marijuana under a false floor.
On appeal, Duran argues:
(1) that his motion to suppress the seized marijuana was wrongly denied,
(2) that the seizure of marijuana resulted from an unlawful detention, and
(3) that the defendant's consent to search the car was invalid because it was not freely, knowingly and voluntarily given, and that even if consent was freely, knowingly and voluntarily given, the search of the automobile exceeded the scope of consent.
To temporarily detain a person for purposes of investigation, an officer must have a reasonable suspicion that the person is committing, has committed or is about to commit a crime. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); also, *4 State v. Sims, 426 So.2d 148 (La.1983). Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each case. See State v. Belton, 441 So.2d 1195 (La.1983), cert. denied 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); and State v. Rosales, 537 So.2d 850 (La.App. 5 Cir.1989). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. See State v. Belton., supra.
In the instant case, Oubre had reasonable cause to stop Duran's car for the traffic violation of improper lane usage. Thus, the question presented here is whether at any time before Duran consented to the search of his vehicle the detention became illegal.
Duran argues that by the time he consented to the search, the investigatory stop had elevated to that of an arrest. He cites State v. Chirlow, 617 So.2d 1 (La.App. 5 Cir.1992), writ denied, 620 So.2d 874 (La.1993). Alternatively, Duran contends that he was at the very least being unlawfully detained.
In State v. Chirlow, supra, the defendants' vehicle was legally stopped based on a tip by a confidential informant stating that the defendant Chirlow was selling cocaine in an area known for drug dealings. Following the stop of the vehicle, the defendants were requested to exit their vehicle. The defendants were personally searched by "a routine pat down of both subjects for possible weapons." The area of the vehicle where the defendants were seated was then searched for weapons. At that point, the defendants were "secured" and there were at least three police units and at least six officers on the scene. The officers advised the defendant Chirlow that they had information that he had narcotics in his vehicle. The officers then advised defendants of their Miranda rights and told them that they were under investigation for possession of cocaine. The defendant Chirlow was asked to consent to a search of his vehicle. Another unit arrived with two more officers and a K-9 dog used to detect narcotics. Thereafter, this Court stated at page 5 the following:
"At this point we find that the circumstances indicate an intent to effect an extended restraint on the liberty of the defendants, far surpassing that of an investigatory stop, elevating the initial stop to an arrest."
The circumstances of the instant case, however, unlike those of Chirlow, do not indicate an intent to effect an extended restraint on the liberty of Duran. Even after other officers and the dogs arrived and before Duran gave his consent to search the vehicle, he (Duran) had not been "secured" or physically restrained.
Although Duran was being detained when he consented to the search, there was reasonable cause for that continued detention. He had a New Mexico driver's license but was driving a vehicle registered in Texas to another individual. He was nervous and evasive when questioned about his destination. When asked where he would be staying that night, Duran hesitated "quite a bit" before stating that he would be ... "just going to get a hotel room." Additionally, Duran did not appear to have sufficient clothing for a 10 to 15 day stay.
At no time did Duran either withdraw his consent or object to an alleged extension of the scope of the search.
After carefully examining the facts and circumstances of this case, we find that the stop was justified, that there was reasonable cause for the police officers to do what they did and that Duran freely, knowingly and voluntarily gave his consent to search the car, likely being of the opinion that the marijuana was well hidden and would not be discovered.
Accordingly, we affirm Duran's conviction and sentence.
AFFIRMED.