PER CURIAM.
WRIT GRANTED; RULING DENYING THE MOTION TO SUPPRESS IS VACATED AND SET ASIDE; CASE REMANDED.
This writ application is taken from the denial of a motion to suppress physical evidence in a proceeding in which Darren Downing (Downing), a juvenile, is charged with possession of cocaine with intent to distribute. The defendant argues that the initial investigatory stop was unjustified under La.Code Crim.P. art. 215.1. We agree.
Article 215.1 provides:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
C. If the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
Detectives Christopher Zeller (Zeller) and Chester Kowalski (Kowalski) testified at the *1117 hearing on the motion to suppress. Their testimony consisted of the following.
Zeller testified he worked approximately three and one half years in the area of narcotics. On January 8,1997 he was patrolling the area of Sycamore and Smith Street along with detectives Kowalski and Christopher Canaski (Canaski) in an unmarked unit. This area was a “very heavy” high narcotics traffic area for street level dealers. At approximately 8:15 p.m. he and the other officers noticed two male juveniles in front of the vehicle. Upon the approach of the unmarked vehicle, the two juveniles moved off the shoulder. The officers then exited the unit. Zeller stated that as he exited the right passenger side of the vehicle the younger juvenile ran. Zeller believed that because of the flight of the younger juvenile it was | gpossible “something” was taking place. Zeller then approached the older juvenile, the defendant, and attempted to question him. The defendant had his hands in his poekets. Zeller asked him to remove his hands from his pocket. Zeller explained that he made that request out of concern for his safety since weapons are involved in narcotic transactions. At that point the defendant became “very nervous.” The defendant’s nervousness led Zeller to believe “something” was going on. Zeller repeated the request while making it clear to the defendant that he was a police officer. After making a third request and getting no response Zeller then removed the defendant’s hands from his pockets and attempted to place the defendant’s hands on the rear portion of the unit. Zeller explained that he did so for security purposes.
Zeller further explained that he attempted to pat the defendant down for security reasons. When he did so the defendant attempted to break away from him. Zeller then positioned the defendant between himself and the rear of the unit while Zeller removed the defendant’s hands from his pockets. Zeller stated that Canaski was next to him assisting him in securing him because the defendant was fidgety and attempting to run. Zeller then patted down the two front pockets within which the defendant had placed his hands. In doing so Zeller located a matchbox. Based on his experience he knew that matchboxes were commonly used to conceal narcotics. While patting him down he did not think the matchbox was a gun or a knife. He removed the matchbox and saw two rock type substances he believed to be crack cocaine.
Zeller testified that after the defendant was secured by himself and Canaski, Zeller informed him of his constitutional rights. As he informed the defendant of his rights, the defendant’s grandmother approached. Zel-ler learned that the defendant lives with his grandmother and that the other juvenile was his 11-year-old brother.[1] The brother ran down the street to inform the grandmother.
Zeller stated that after the defendant was placed in custody the defendant blurted out that the rocks did not belong to him but that he was trying to sell them for someone else. Zeller also stated that the defendant spontaneously made this admission when the cocaine was located and that to his knowledge no meaningful consultation had yet been had between the defendant and a parent and guardian.
| gZeller testified that at the time he approached the defendant he was standing in the roadway. Zeller did not know what the defendant was doing and at the time he approached him Zeller did not suspect he was committing a crime. Zeller approached the defendant because he was standing in the middle of the roadway in a high crime area. Zeller later learned the defendant lived in the vicinity. He stated the defendant was obstructing the highway so that the unit could not go by.
Zeller also testified that he searched the defendant because of the following factors: (1) the location was a high crime area; (2) the defendant was nervous, and (3) the defendant refused to remove his hands from his pocket.
Kowalski testified he was driving the unit the evening of the incident. He observed the defendant loitering on the side of the road. The younger juvenile was making circles on *1118 a bicycle. Kowalski had worked for 11 years in the narcotics area. The defendant was in a high crime area and was a suspected narcotics dealer since he was in the area. Prior to approaching the defendant he did not suspect he was committing a crime although he suspected he was about to commit a crime. Kowalski stated that he suspected a crime was about to be committed because it was dark and the area was a high crime area. In addition, in his experience from purchasing narcotics in that area, he would buy them from people who would stand on the side of the road. When Kowalski would stop his vehicle people would then approach him to ask what he was looking for. He did not suspect the defendant of being a drug dealer prior to approaching him.
Kowalski stopped the vehicle and exited it along with Zeller and Canaski. The defendant had both of his hands in his pants’ pockets. Zeller told him to remove his hands for the officers’ safety. The defendant did not remove his hands. Zeller then took the defendant’s wrists and removed his hands from his pockets, placing his hands on the hood of the ear. The defendant tried to run but could not run because the officers blocked him. The defendant appeared “very nervous.” He was “very fidgety” and wanted to run. Zeller patted him down, reached into the front pants pocket and removed a matchbox. At that time the defendant stated the drugs were given to him for sale on the street. He repeated this statement a few times.
The trial judge gave the following reasons for denying the motion to suppress:
Uthese officers were patrolling in a high drug trafficking area. They observed the defendant and this young juvenile and his brother acting suspiciously and apparently in the middle of the roadway. According to one of the officer’s testimony he was obstructing the roadway. When the police officers stopped the younger brother of this juvenile, this defendant here ran away. Under the circumstances the Court finds that there was a voluntary stop or stop under Article 215.1.
At that point we move to the next issue concerning the search of this young man here. The Court finds that the officer was justified in conducting a pat down search for weapons when he asked this young man to remove his hands from his pockets three times and the young man did not do so. During this pat down search, the officers felt an object which they could identify as a matchbox. And according to their experience in working in narcotics areas matchboxes are apparently used to hide crack cocaine. The Court finds the search and seizure of the matchbox in this case to be valid. And I’ve reviewed a 5th Circuit Court of Appeal decision, State v. Stevens ... in which the Fifth Circuit approved the seizure such as this.
This court must first determine whether there was reasonable suspicion for an investigatory stop.
Reasonable cause for an investigatory stop is something less than probable cause and must be determined under the facts of each ease, by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference. The totality of the circumstances must be considered in determining whether reasonable cause exists.
State v. Chirlow, 617 So.2d 1, 4 (La.App. 5th Cir.1992), writ denied, 620 So.2d 874 (La.1993).
The officers’ testimony is inconsistent regarding Downing’s position at the time of the initial approach.[2] Keller testified that when the unit approached the juveniles they moved off the shoulder. He also testified Downing was standing in the middle of the roadway, obstructing the highway. In contrast, Kow-alski stated that Downing was loitering on the side of the road while the younger boy was making circles on a bicycle. However, both officers testified that they did not suspect that the two juveniles were engaging in a crime. Kowalski explained that he thought a crime was about to be committed because it was dark and the area was a high crime area. *1119 He also based his suspicion on past experience in observing street level transactions. Additionally, Downing was.not known as a narcotic violator, nor did he engage in any actions suggestive of a narcotics transaction.
|5Here the officers assumed that criminal conduct was about to occur. They expressed a generalized suspicion that possible criminal activity was taking place. They did not base that suspicion on articulable facts. This is insufficient to justify an investigative stop under 215.1. State v. Hebert, 95-1645 (La. App. 3rd Cir. 6/5/96), 676 So.2d 692, writ denied 96-1736 (La. 10/11/96), 680 So.2d 643, reconsideration denied, 96-1736 (La. 1/31/97), 687 So.2d 394. The Louisiana Supreme Court has explained in State v. McHugh, 92-1852 (La. 1/6/94), 630 So.2d 1259, 1263:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. Therefore, an investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be engaged in criminal activity, or there must be reasonable grounds to believe that the person has committed or is wanted for past criminal conduct [citations omitted.]
The officers in this ease relied on the fact that the area was a high crime area known for street level drug dealing. The fact that two adolescents were observed in the street, one of whom was riding a bicycle is insufficient to show the investigative stop was justified. Furthermore, although the time was late for the two boys to be playing in the street, it was not so unusually late as to trigger an articulable suspicion that drug activity was involved. Prior to the stop the officers did not observe any possible drug transaction taking place. The mere fact that the younger child ran off on his bicycle, is insufficient to justify a stop of the remaining juvenile. Such activity engaged by a young adolescent does not give rise to an articulable suspicion of drug activity. In this instance, the younger child fled to inform his grandmother the police were present.
In State v. Ellington, 96-0766 (La.App. 4th Cir. 9/4/96), 680 So.2d 174 the court held that standing in a high crime area known for drug activity and placing hands in a pocket upon seeing police officers are insufficient facts to justify stopping the defendant absent any testimony that the defendant appeared to be engaged in a drug transaction or attempted to conceal a suspicious object.
The acts of a 14-year-old and an 11-year-old standing and playing in the street before curfew were all acts which were outwardly innocent. Further, the juveniles lived in the area with their grandmother. To sanction an investigative stop under these circumstances would|6preclude children living in high crime areas from playing in their neighborhood. Since the officers do not have the right to make an investigatory stop, the evidence which was seized as a result thereof cannot constitutionally be admitted into evidence. State v. Smith, 347 So.2d 1127, 1128 (La.1977).[3]
Accordingly, for the reasons stated, we vacate and set aside the trial court’s denial of the Motion to Suppress, and remand for further proceedings.

. A police report entered into evidence refers to the younger male as being 10 years of age.

. We also note that both police reports introduced into evidence refer to the defendant as standing. One report states he was standing at the comer of two streets.

. Even assuming the stop was justified, we further note that the state relies on State v. Stevens, 95-501 (La.App. 5th Cir. 3/2/96), 672 So.2d 986 as dispositive. However, we explained in State v. Otis Barney, 97-777 (La.App. 5th Cir. 2/25/98), 708 So.2d 1205 that the Stevens case relied on cases “in which the officer observed the defendants selling drugs from matchboxes or in which the suspect abandoned the matchbox.” 97-977 at p. 10-11. Thus, we found Stevens inapplicable to a case involving different factual circumstances. We hold that in this instance Stevens is also inapplicable.